UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Debi Read | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| John Du Wors | Cyrus Naim |

**Proceedings:**     MOTION TO DISMISS (Dkt. 14, filed May 5, 2014)

SPECIAL MOTION TO STRIKE (Dkt. 15, filed May 5, 2014)

## I.     INTRODUCTION

On February 19, 2014, plaintiffs New Show Studios LLC ("New Show"), Anthony Valkanas, and Davison Design & Development Inc. ("Davison Design") filed this action against defendants James Needle, Greg Howe, and Does 1-10, inclusive.  Plaintiffs' operative first amended complaint ("FAC") asserts claims for (1) violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, et seq., (2) violations of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, et seq., (3) unauthorized access to computers, in violation of the California Comprehensive Computer Data Access and Fraud Act ("CCCDAFA"), Cal. Penal Code §§ 502, et seq., (4) receiving stolen property, in violation of Cal. Penal Code §§ 496, et seq., (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., (6) invasion of privacy, (7) conversion, (8) trade secret misappropriation, (9) intentional interference with contractual relations, (10) intentional interference with prospective economic advantage, (11) negligent interference with prospective economic advantage, (12) defamation per se, (13) trade libel, (14) false advertising, in violation of 15 U.S.C. §§ 1125, et seq., (15) false advertising, in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., (16) copyright infringement, in violation of 17 U.S.C. §§ 501, et seq., and (17) trademark infringement, in violation of 15 U.S.C. §§ 1125(a), et seq.  Plaintiffs' sixteenth and seventeenth claims are asserted against Needle only, and plaintiffs' twelfth claim is asserted against Howe only; all other claims are asserted against defendants collectively.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|----------|--------------------------|------|----------------|
| Title    | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

On May 5, 2014, Howe and Needle jointly filed (1) a motion to dismiss claims 1-8 and 10-11 of the FAC, and (2) a special motion to strike claims 9-15 of the FAC. Dkts. 14-15.[1] Defendants filed this special motion to strike pursuant to California's Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") statute, Cal. Code Civ. Proc. § 425.16. On May 27, 2014, plaintiffs opposed both motions, dkts. 24, 25, and on June 16, 2014, defendants replied, dkts. 29, 30. On June 30, 2014, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND[2]

Plaintiff New Show alleges that it is a corporation specializing in packaging and marketing entertainment ideas and concepts for individuals who have ideas but lack entertainment industry connections. FAC ¶ 11. Plaintiffs state that plaintiff Anthony Valkanas is an employee of New Show, and currently acts as New Show's president. Id. ¶ 15.

Plaintiffs allege that defendant Greg Howe is a resident of Canada, as well as a former client of New Show. Id. ¶ 17. The FAC states that Howe signed a contract with New Show, by which New Show agreed to represent Howe's entertainment concept if Howe supplied a video explaining his show concept. Id. Plaintiffs allege that New Show offered to produce a video reel for Howe in exchange for additional fees, but that Howe

---

[1] The Court directs the parties to this Court's procedures, which provide, in pertinent part: "Counsel are admonished not to circumvent page limits by filing multiple motions which purport to address separate issues in a case. Such motions will not be considered unless counsel obtains leave to file more than one motion or to file a brief that exceeds the page limits authorized by the Local Rules." Dkt. 5 at 2-3. The Court exercises its discretion to consider both the motion to dismiss and the motion to strike, but cautions counsel that "the Court expects strict compliance," id. at 1, with relevant Local Rules in the future.

[2] Defendants' motion to strike, as well as plaintiffs' opposition, contain significantly more factual detail about the events at issue. The Court however, considers defendants' motions under Fed. R. Civ. P. 12(b)(6), and thus limits its analysis to the facts alleged in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|----------|--------------------------|------|----------------|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

was also free to produce his own reel.  Howe allegedly refused to either produce his own reel, or pay New Show to produce the reel.  Id.  The FAC asserts that Howe thereafter assumed an "inexplicably aggressive and vindicative posture" towards New Show.  Id. ¶ 18.  In late 2013, New Show alleges that it began recieving hostile emails from Howe.  Id. ¶ 19.  The FAC asserts that these emails made clear that Howe was communicating with New Show's clients and trying to convince them to breach their agreements with New Show.  Id. ¶ 20.  These emails also allegedly claimed to have "inside information" on New Show's employees.  Id.

The FAC alleges that defendant Jimm Needle[3] is a resident of West Mifflin, Pennsylvania.  Id. ¶ 20.  Plaintiffs state that Needle was employed by plaintiff Davison Design from November 7, 2011, to December 20, 2012.  Needle then transferred to New Show's companion company George Davison Studios, LLC ("GDS"), where he worked as a creative producer until April 18, 2013.  Id.  Plaintiffs allege that before he ended his employment with GDS, Needle misappropriated several visual works, identified as the "DARE TO INVENT Videos," and published them on his personal website, www.jimmneedle.com.  Id. ¶ 21.  The FAC states that, although Needle was involved in the production of these videos, the videos were produced subject to a work-for-hire agreement and are the property of Davison Design and an unidentified "sister company."  Id.  The DARE TO INVENT videos all bear the DARE TO INVENT logo, a trademark allegedly registered to Davison Design, Registration No. 4052848.  Id.  Plaintiffs further allege that Needle used these videos to promote his own production services.

After he ended his employment with GDS, Needle allegedly met Howe online, where they began communicating by email.  Id. ¶ 22.  The FAC asserts that Howe persuaded Needle to assist him in sabotaging New Show and convincing New Show's clients to move to one of New Show's competitors, the Television Writer's Vault ("TWV").  Id. ¶ 23.  Plaintiffs assert that Needle agreed to supply Howe with New Show's confidential client data and proprietary trade secret information.  Id. ¶ 24.  To this end, Needle "pressured his former colleagues at New Show" for access to New Show's confidential information, and then shared this information with Howe.  Id. ¶ 25.  Plaintiffs allege that defendants then contacted New Show's clients, persuaded them to

---

[3] The FAC identifies Mr. Needle as "Jimm" Needle.  Defendants state that Mr. Needle is in fact named James Needle.  See Needle Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

breach their contracts with New Show, and diverted their business to TWV; plaintiffs assert that "[d]efendants sole intention was to divert [New Show's] business to its competitor, TWV." Id. ¶ 26.  In these communications, Howe allegedly confirmed that he had access to New Show's entire client list, and also falsely accused plaintiff Valkanas of committing a double homicide. Id. ¶¶ 27-28.  Finally, plaintiffs allegedly forwarded New Show's confidential information to TWV executives and employees. Id. ¶ 29.

## III.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

that requires the reviewing court to draw on its judicial experience and common sense."
Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

B.     Fed. R. Civ. P. 12(e)

Fed. R. Civ. P. 12(e) provides, in relevant part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "Motions for a more definite statement are viewed with disfavor, and are rarely granted." Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999). A motion filed pursuant to Rule 12(e) "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). "Such a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." True v. American Honda Motor Co., Inc., 520 F. Supp. 2d 1175, 1180 (C.D. Cal. 2007). By contrast, "a Rule 12(e) motion is more likely to be granted where the complaint is so general that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

ambiguity arises in determining the nature of the claim or the parties against whom it is being made." Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

### C.    Anti-SLAPP Special Motion to Strike

Defendants seek to strike certain of plaintiffs' claims pursuant to California's Anti-Strategic Lawsuit Against Public Participation ("Anti-SLAPP") statute, Cal. Code Civ. Proc. § 425.16.  "The Legislature enacted section 425.16 to prevent and deter lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.  Because these meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP target." Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 278 (2006); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003) (noting that the purpose of the anti-SLAPP statute is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.").  This statute allows a court to strike any state claim arising from a defendant's exercise of constitutionally protected rights of free speech or petition for redress or grievances. Flatley v. Mauro, 39 Cal. 4th 299, 312-13 (2006); Cal. Code. Civ. Proc. § 426.16(b)(1). The anti-SLAPP statute is to be construed broadly.  Cal. Code Civ. Proc. § 426.16(a); Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).

Defendants sued in federal court are entitled to bring anti-SLAPP motions to strike state law claims.  Covad, 377 F.3d at 1091; Kellas v. Smith, 2006 U.S. Dist. LEXIS 96659, at *8-*9 (C.D. Cal. 2006).  The court in Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973 (C.D. Cal. 1999), set forth a standard to be applied for such motions that has been widely adopted by courts in this Circuit:

> If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.  If a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Id. at 983; see, e.g., Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001); Aeroplate Corp. v. Arch Ins. Co., 2007 U.S. Dist. LEXIS 86207, at *22-*23 (E.D. Cal. 2007) (citing Condit v. Nat'l Enquirer, 248 F. Supp. 2d 945, 952-53 (E.D. Cal. 2002)); Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006).

## IV.  ANALYSIS

The Court begins with some housekeeping.  Defendants have filed a motion to dismiss claims 1-8, and 10-11 of the FAC, and an Anti-SLAPP motion to strike claims 9-15 of the FAC.  Defendants' Anti-SLAPP motion asks, in the alternative, that claims 9-15 be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  After considering defendants' motions, the Court finds that consideration of defendants' Anti-SLAPP motion to strike would be premature, and that claims 9-15 are better evaluated under Rule 12(b)(6) at this juncture.

The Court reaches this conclusion because consideration of the Anti-SLAPP motion would undermine the orderly resolution of this dispute.  If the Court were to reach defendants' Anti-SLAPP motion, the Court would have to first determine whether claims 9-15 falls within the protections of the Anti-SLAPP statute.  See Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003).  If they do, then the Court would have to evaluate whether plaintiffs' had met their burden of showing a reasonable probability of success on the merits of their claims.  Id.  "To do this, the plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001) (quoting Wilcox v. Superior Ct., 27 Cal. App. 4th 809, 823 (1994)).  The Court determines whether a claim is "legally sufficient" under a standard analogous to Rule 12(b)(6).  Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 981 (C.D. Cal. 1999).  If the claim is legally sufficient, the Court turns to the question of whether plaintiffs had "support[ed] their claims with adequate evidence."  Id.

Here, as discussed below, the Court finds that all but one of the claims at issue in defendants' Anti-SLAPP motion fail to state a claim.  Similarly, the Court finds that all but one of the claims at issue in defendants' motion to dismiss also fail to state a claim.  Accordingly, if the Court were to reach plaintiff's Anti-SLAPP motion, the claims in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|----------|--------------------------|------|----------------|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

case could fragment into as many as four categories: (1) claims dismissed under Rule 12(b)(6), (2) claims that survive Rule 12(b)(6), but are not subject to a motion to strike, (3) claims stricken under the Anti-SLAPP statute for legal insufficiency, and (4) claims that musy be evaluated for factual sufficiency under the Anti-SLAPP statute. Further complicating this analysis would be the need to grant plaintiffs leave to amend their legally insufficient claims, Rogers, 57 F. Supp. 2d at 982, as well as potentially permitting plaintiffs to take discovery to substantiate their factual opposition to the motion to strike, Metabolife, 264 F.3d at 846-47.

Such a fragmented disposition of this action is incompatible with the Federal Rules goal of a "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Accordingly, the Court concludes that claims 9-15 will be evaluated under Rule 12(b)(6), and therefore DENIES without prejudice the Anti-SLAPP portion of defendants' motion to strike. The Court expresses no view on whether this suit falls within the protections of the Anti-SLAPP statute. This denial shall not preclude the Court from later determining that defendants are "prevailing defendants" under the Anti-SLAPP statute for purposes of this special motion to strike. See Collins v. Allstate Indem. Co., 428 F. App'x 688, 690 (9th Cir. 2011); see also Art of Living Found. v. Does 1-10, 2012 WL 1565281 (N.D. Cal. May 1, 2012) (explaining that although"the anti-SLAPP motion was no longer pending[,] . . . [i]n determining whether to exercise their discretion to deem a defendant a prevailing party, courts must consider the 'critical issue' of 'which party realized its objectives in the litigation.'").

The Court now turns to the question of whether the FAC states claims for relief.

## A.    CFAA/ CCCDAFA

"Congress enacted the CFAA in 1984 primarily to address the growing problem of computer hacking, recognizing that '[i]n intentionally trespassing into someone else's computer files, the offender obtains at the very least information as to how to break into that computer system." United States v. Nosal, 676 F.3d 854, 858 (9th Cir. 2012) (quoting S. Rep. No. 99-432, at 9 (1986)). The CFAA proscribes a broad range of computer-related conduct, "the majority of which involve[s] accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." LVRC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Holdings LLC v. Brekka, 581 F.3d 1127, 1131 (9th Cir. 2009) (citing 18 U.S.C. § 1030(a)).

    Plaintiffs assert a claim for violation of the CFAA against Needle and Howe. Plaintiffs allege that "[a]fter he left Plaintiffs' employment, Needle pressured his former colleagues to grant him unlawful access to confidential and sensitive information regarding thousands of [New Show's] clients and prospective clients as well as information regarding [New Show's] business plans, pricing and marketing strategies, and other highly sensitive and confidential information." FAC ¶ 36. Plaintiffs state that Needle therefore "intentionally gained access to confidential and sensitive information stored on [New Show's] private computer network. Id. ¶ 37. The FAC further alleges that Needle accessed plaintiffs' computer network "with the full knowledge and approval of Howe." Id. ¶ 38.

    The Court finds that plaintiffs have failed to state a claim under the CFAA, for two separate reasons. First, plaintiffs have not properly alleged that either Needle or Howe accessed plaintiffs' computer systems. To prevail on a CFAA claim, plaintiffs must establish, among other things, that defendants "intentionally accessed a computer." LVRC Holdings LLC, 581 F.3d at 1132. But the FAC is devoid of any allegation that the defendants accessed any computer. Instead, the FAC only alleges that Needle "gained access to confidential and sensitive information." FAC ¶ 37. Accessing plaintiffs' information, however, is not the same thing as accessing plaintiffs' computer systems, even if that information was at some point stored on those computers. The Ninth Circuit has specifically cautioned against reading the CFAA as an "expansive misappropriation statute." Nosal, 676 F.3d at 857; see also id. at 863 (explaining that the "general purpose" of the CFAA "is to punish hacking—the circumvention of technological access barriers—not misappropriation of trade secrets"). If plaintiffs wish to assert a claim under the CFAA, they must plainly allege that defendants' accessed their computer systems, and explain the basis for those allegations.

    Second, plaintiffs have not alleged that they suffered any "loss" as defined by the CFAA. Plaintiffs may only pursue a civil action under the CFAA if (1) "they suffer[ed] damage or loss by reason of a violation of the [statute]" and (2) that the conduct involves one of several factors. 18 U.S.C. § 1030(g). The only factor relevant to the present case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Id. § 1030(c)(4)(A)(i)(I). "Loss" is defined as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

> [A]ny reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

Id. § 1030(e)(11). The weight of authority suggests that, under this definition, the alleged "loss" must be the result of "damage to the computer system that was accessed without authorization." AtPac, Inc. v. Aptitude Solutions, Inc., 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010). By contrast, subsequent economic damage unrelated to the computer itself does not constitute "loss." See SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 721 (N.D. Ill. 2009) (citing cases); Farmers Ins. Exch. v. Steele Ins. Agency, Inc., 2013 WL 3872950, at *21 (E.D. Cal. July 25, 2013) (same). Here, the only "loss" alleged by plaintiffs is "competitive[] benefit[]" to their competitor TWV; plaintiffs do not allege that their computer systems were damaged in any way. FAC ¶ 39. Accordingly, the Court concludes that plaintiffs have not alleged "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value," 18 U.S.C. § 1030(c)(4)(A)(i)(I), and thus have not stated a claim under the CFAA.

Plaintiffs resist this conclusion, arguing that defendants "obtained a thing of value" from plaintiffs' computer systems, presumably referring to plaintiffs' confidential information. Plaintiffs contend that under 18 U.S.C. § 1030(a)(4), "obtain[ing] anything of value" constitutes another means of violating CFAA, rendering "loss" irrelevant. The Court finds this reasoning unpersuasive. Even if the Court were to accept plaintiffs' argument that "obtaining a thing of value" constitutes another means of violating CFAA, plaintiffs may only pursue a private action for that violation through 18 U.S.C. § 1030(g), which, as discussed above, requires plaintiffs to establish loss.

The Court also finds that plaintiffs have failed to state a claim under the CCCDAFA, the California state equivalent to the CFAA. First, for the reasons stated above, plaintiffs have not alleged that defendants "accessed" plaintiffs' computer systems. See Cal. Penal Code § 502(b)(1) ("'Access' means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."). Second, plaintiffs have not alleged that defendants circumvented any technical or code-based barriers. See In re iPhone Application Litig., 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ("[I]ndividuals may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|----------|-------------------------|------|----------------|
| Title    | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

only be subjected to liability for acting 'without permission' under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers." (quotations and alterations omitted)).

**B.     SCA**

"Enacted in 1986, the SCA creates criminal and civil liability for certain unauthorized access to stored communications and records." Thomas v. Smith, 2012 WL 5346856 (C.D. Cal. Oct. 25, 2012) (citing Konop v. Haw. Airlines, Inc., 302 F.3d 868, 874 (9th Cir. 2002)). The SCA creates "a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage.'" Theofel v. Farey-Jones, 359 F.3d 1066, 1072 (9th Cir. 2004) (quoting 18 U.S.C. §§ 2701(a)(1) , 2707(a)). "[E]lectronic storage" is defined as either "temporary, intermediate storage . . . incidental to . . . electronic transmission," or "storage . . . for purposes of backup protection." 28 U.S.C. § 2510(17). Plaintiffs assert a claim for violation of the SCA, based on the same allegations underlying their CFAA and CCCDAFA claims.

The Court finds that the FAC fails to state a claim under the SCA. First, for the reasons discussed above, plaintiffs have not alleged that defendants actually "accessed" plaintiffs' computer systems. Second, plaintiffs have not alleged that their computer systems constitute " a facility through which an electronic communication service is provided." An "electronic communication service" ("ECS") is "any service which provides to users thereof the ability to send and receive wire or electronic communications." 18 U.S.C. § 2510(15). The FAC contains no allegation that plaintiffs' systems fall within this definition. Plaintiffs' opposition, however, states that "New Show operates a bulletin board and email service through [its] servers." Cf. Garcia v. City of Laredo, Tex., 702 F.3d 788, 792 (5th Cir. 2012) ("Courts have interpreted the statute to apply to providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services."). Setting aside the fact that this allegation is absent from the FAC, plaintiffs still have not alleged that their "confidential and sensitive information," FAC ¶ 43, was stored on this alleged email service or electronic bulletin board. Nor do plaintiffs cite any authority for the proposition that a plaintiff can bring every piece of data on a computer system within the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

protection of the SCA merely by operating an email service on that computer. Accordingly, the Court finds that plaintiffs have failed to state a claim under the SCA.

### C.   Trade Secret Misappropriation

Plaintiff asserts a claim for misappropriation of trade secrets, in violation of California's Uniform Trade Secrets Act, California Civ. Code §§ 3426 et seq. ("CUTSA"). To state a claim for misappropriation of trade secrets under the CUTSA, a plaintiff must allege two elements: "(1) the existence of a trade secret, and (2) misappropriation of the trade secret." AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code § 3426.1(b)). Plaintiffs predicate this claim on the same allegations underlying their CFAA, CCCDAFA, and SCA claims, namely that defendants procured plaintiffs' confidential information. Plaintiffs allege that defendants "misappropriated [New Show's] confidential, proprietary competitor information, including information regarding [New Show's] clients and its business plans, pricing, marketing strategies, client contacts, and other competitive information constituting [New Show's] trade secrets." FAC ¶ 84.

Defendants only seek dismissal of this count on the grounds that plaintiffs have not identified the allegedly misappropriated trade secrets with specificity, as required by Cal. Code Civ. P. § 2019.210. Cal. Civ. Proc. Code § 2019.210 provides, in pertinent part, that "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity." In citing § 2019.210, defendants rely principally on this Court's decision in Rovince Int'l Corp. v. Preston, 2013 WL 5539430 (C.D. Cal. Oct. 7, 2013). Defendants argue that Rovince stands for the proposition that Cal. Code Civ. P. § 2019.210 requires trade secret plaintiffs to identify their trade secrets with particularity.

The Court finds this argument unpersuasive. As an initial matter, Rovince did not reach the question of whether Cal. Code Civ. P. § 2019.210 applies in federal court. Instead, Rovince found that, even if § 2019.210 did not apply in federal court, the complaint in that case set forth such internally contradictory allegations about the trade secrets at issue that a more definite statement was required under Fed. R. Civ. P. 12(e). Moreover, Ninth Circuit case law subsequent to Rovince has made clear that, even assuming § 2019.210 governs actions in federal court, the statute does not provide grounds for dismissing a trade secret claim at the pleading stage. See Meggitt San Juan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Capistrano, Inc. v. Yongzhong, — Fed. App'x —, 2014 WL 2199329, at *1 (9th Cir. May 28, 2014).

In any event, defendants also move for a more definite statement regarding the trade secrets pursuant to Rule 12(e), again relying on this Court's decision in Rovince. The Court finds that a more definite statement is not required. Unlike Rovince, where the complaint contradicted itself about what trade secrets were at issue, the FAC here appears to consistently allege that the trade secrets concern client data and business strategies. To the extent more detail is needed, that detail can be obtained through discovery, and "[i]f the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied." Beery v. Hitachi Home Electronics (America), Inc, 157 F.R.D. 477, 480 (C.D. Cal. 1993).

### D.    Receiving Stolen Property, Invasion of Privacy, and Conversion

Plaintiffs assert claims for (1) receiving stolen property, in violation of Cal. Penal Code §§ 496, et seq., (2) invasion of privacy, and (3) conversion. All three claims are once again premised on allegations that Needle "gained access to confidential and sensitive information stored on [New Show's] private computer network." FAC ¶¶ 57, 69, 76.

Defendants argue that all three claims are preempted by the CUTSA. The Court agrees. The CUTSA is a broad, comprehensive statute designed to bring uniformity and consistency to the law of trade secrets, and also to codify certain case law concerning trade secret remedies. K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc., 171 Cal. App. 4th 939, 957 (2009); Silvaco Data Systems v. Intel Corp., 184 Cal. App. 4th 210, 232-33 (2010) (explaining that the CUTSA was meant to replace "the notoriously haphazard web of disparate laws governing trade secret liability" with "a relatively uniform and consistent set of rules defining . . . liability."). To accomplish this purpose, the CUTSA comprehensively defines the foundational concepts in the law of trade secrets, and determines when damages, injunctive relief, and attorney's fees can be recovered pursuant to a claim for misappropriation of trade secrets. Acculmage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003).

California courts have held that due to the CUTSA's comprehensive scope, it supercedes common law claims for misappropriation of trade secrets. I.E. Assocs. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Safeco Title Ins. Co., 39 Cal. 3d 281, 285 (1985) ("The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to occupy the field."); K.C. Multimedia, Inc., 171 Cal. App. 4th at 954 ("At least as to common law trade secret misappropriation claims, [the CUTSA] occupies the field in California."). Additionally, the CUTSA preempts other civil claims if the other claim is "based on the same nucleus of facts as trade secret misappropriation." K.C. Multimedia, 171 Cal. App. 4th at 962. "The determination of whether a claim is based on trade secret misappropriation is largely factual." Id. at 954.

Here, the Court has no difficulty concluding that plaintiffs' claims for receipt of lost property, invasion of privacy, and conversion are all "based on the same nucleus of facts" as plaintiffs' claim for trade secret proposal. Most saliently, all three claims are premised on allegations that are virtually identical to the allegations contained in the FAC's claim for trade secret misappropriation. Compare FAC ¶¶ 57 (receiving stolen property); id. ¶ 69 (invasion of privacy); and id. ¶ 76 (conversion), with id. ¶ 84. And factually speaking, all three claims accuse defendants of unlawfully obtaining plaintiffs' confidential information—i.e., that defendants misappropriated plaintiffs' trade secrets. Accordingly, the Court finds that these three claims are "based on the same nucleus of facts" as plaintiffs' claim for trade secret misappropriation, and are thus preempted by CUTSA.

Plaintiffs contest this conclusion on several grounds, none of which is availing. First, plaintiffs assert that their claims for conversion and receiving stolen property are not entirely preempted because the FAC alleges that plaintiffs stole information other than trade secrets. But to assert either a claim for conversion or a claim for receiving stolen property, plaintiffs must explain why they have a property interest in that information. See Witkin, Summary of Cal. Law Torts § 701 (10th ed. 2005); Cal. Penal Code §§ 496.[4] Here, plaintiffs cite only a single case, Welco Electronics, Inc. v. Mora,

---

[4] The Court observes that the Ninth Circuit has held that, under California law, "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'" Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003). Courts "apply a three-part test to determine whether a property right exists: 'First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

223 Cal. App. 4th 202 (2014), to support their contention that they can have a property interest in the information at issue.  <u>Welco</u>, however, is inapposite, as in that case the Court of Appeal analyzed whether the plaintiff could state a claim for conversion by alleging that the defendants stole their credit card information.  The Court of Appeal concluded that "[t]aking a credit card or its information in order to obtain money is not materially different in effect than conversions by taking other instruments such as checks, bonds, notes, bills of exchange, warehouse receipts, stock certificates, and information related to those instruments, to obtain someone else's money."  <u>Id.</u> at 213.  This reasoning has no bearing on the present case, where the defendants are not alleged to have stolen any "private payment information."

Defendants also argue that their invasion of privacy claim is not preempted because the claim is based not on misappropriation of trade secrets, but instead on the fact that defendants "accessed a private place" and "publically disclosed private facts." Opp. Dismiss 11.  The Court finds this contention unpersuasive.  As noted above, "[t]he determination of whether a claim is based on trade secret misappropriation is largely factual."  <u>K.C. Multimedia</u>, 171 Cal. App. 4th at 962.  Here, the invasion of privacy claim is factually predicated on the same alleged conduct that gives rise to plaintiffs' claim for trade secret misappropriation.  As such, the claim is preempted by the CUTSA, even if the claim purports to challenge different aspects of that conduct.

Finally, plaintiffs assert that they may also assert a claim for invasion of privacy because defendants' placed plaintiff Valkanas in a false light by falsely claiming that

---

legitimate claim to exclusivity.'"  <u>Id.</u> at 1030 (citing <u>G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.</u>, 958 F.2d 896, 906 (9th Cir. 1992)).  Here, the only allegation that the information at issue here is "capable of exclusive possession or control" rests on the confidentiality of the information.  FAC ¶¶ 75-76.  Because this is the same basis for plaintiffs' claim that they own trade secrets, FAC ¶ 82, the claim is thus "based on the same nucleus of facts" as plaintiffs' misappropriation claim, and hence preempted by the CUTSA.  <u>See</u> <u>Mattel, Inc. v. MGA Entm't, Inc.</u>, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (explaining that the CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Valkanas was investigated for homicide.  But the invasion of privacy claim, as pled, makes no reference to this allegation.  <u>See</u> FAC ¶¶ 67-73.  And while the claim does incorporate by reference all prior paragraphs in the complaint, including the homicide allegation, that wholesale incorporation is not sufficient to provide a "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); <u>see also</u> <u>Destfino v. Kennedy</u>, 2008 WL 4810770, at *3 (E.D. Cal. Nov. 3, 2008), <u>aff'd sub nom.</u> <u>Destfino v. Reiswig</u>, 630 F.3d 952 (9th Cir. 2011) (explaining that the practice of "incorporat[ing] each preceding paragraph, regardless of relevancy" has, in certain circumstances, "been harshly criticized as a form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice.").  The Court therefore concludes that the FAC, as currently pled, fails to state a claim for invasion of privacy.


### E. UCL

The California UCL provides a remedy for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The statute is phrased in the "disjunctive," and, as a result, is violated where a defendant's act or practice is unlawful, unfair, or fraudulent.  <u>Prata v. Super. Ct.</u>, 91 Cal. App. 4th 1128, 1137 (2001).

The FAC explicitly premises its claim under the UCL on plaintiffs' CFAA and trade secret misappropriation claims.  FAC ¶¶ 62-66; <u>see also</u> <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1143 (2003) (explaining that the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices").   However, because the Court finds that plaintiff has not stated a claim under the CFAA, the claim cannot serve as a predicate for a UCL claim.  Similarly, CUTSA preempts any claim for trade secret misappropriation brought through the UCL.  <u>K.C. Multimedia, Inc.</u>, 171 Cal. App. 4th at 962 ("[Plaintiff's] statutory unfair competition claim rests squarely on its factual allegations of trade secret misappropriation. . . . That being so, this claim is also preempted.").

In its opposition, plaintiffs also assert that defendants' actions are "unfair" under the UCL because defendants' competitors "now have unfettered access to New Show's customer contacts, business plans, and communications.  Setting to one side the question of whether such a UCL claim would also be preempted by the CUTSA, plaintiffs have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

failed to allege an unfair practice under the UCL.  For a competitor like New Show to state a claim under the "unfair" prong of the UCL, the claim must allege "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999).  Here, plaintiffs have only alleged that defendants' misappropriated information that could be helpful to New Show's competitors.  But the misappropriation of a client list or business strategy does not, standing alone, "significantly threaten[] or harm[] competition."  Instead, the FAC only alleges "harm to [New Show's] commercial interests, rather than harm to competition."  Sun Microsystems, Inc. v. Microsoft Corp., 87 F. Supp. 2d 992, 1001 (N.D. Cal. 2000).  Accordingly, the Court finds that plaintiff has failed to state a claim under the "unfair" prong of the UCL.

### F. Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, and Trade Libel

Plaintiffs assert claims for (1) intentional interference with contractual relations, (2) intentional interference with prospective economic advantage, and (3) trade libel.  To prevail on a claim for interference with contractual relations, the plaintiff must establish (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship, (4) actual breach or disruption of the contractual relationship, and (5) damages.  CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1105 (9th Cir. 2007) (citing Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th 26, 55 (1998)).

To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege:

(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|----------|--------------------------|------|---------------|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Id. at 1108 (quoting Korea Supply Co., 29 Cal. 4th at 1153 (2003)).  The "primary difference" between this tort and the tort of interference with contractual relations is that a plaintiff must allege that the defendant performed an act that is "wrongful 'by some measure beyond the fact of the interference itself.'"  Id. (quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 378 (1995)).

Finally, trade libel is defined as "an intentional disparagement of the quality of property, which results in pecuniary damage . . . ."  Erlich v. Etner, 224 Cal. App. 2d 69, 73 (1964).  "Unlike personal defamation, the plaintiff seeking damages for trade libel must prove special damages in the form of pecuniary loss; he must carry the burden of proving that the disparaging statement is false; and such personal elements of damage as mental distress have been strictly excluded from these claims."  Guess, Inc. v. Superior Ct., 176 Cal. App. 3d 473, 479 (1986).  "The cause of action for trade libel thus requires: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages."  Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988).

All three of these claims appear to be predicated on similar allegations that defendants contacted plaintiffs' clients and communicated information to those clients with the intention of disrupting plaintiffs' business relationship with those clients.  FAC ¶¶ 91, 95, 112.[5]  However, the Court finds that the FAC does not properly provide sufficient "factual content" about the nature of these communications to state a claim under the pleading standard set forth by Iqbal and Twombly.  The portions of the FAC specifically alleging these three claims are plainly insufficient, as these portions of the FAC contain no factual allegations.  See id. ¶¶ 89-92, 93, 97, 111-113.  Instead, they consist entirely of "formulaic recitation[s] of the elements of [the] cause[s] of action."  Twombly, 550 U.S. at 555.

---

[5] The Court separately notes that if plaintiffs intend to assert, in the alternative, that these claims, as well as the claim for negligent interference with prospective economic advantage, are predicated on defendants' alleged theft of confidential information, see, e.g., FAC ¶ 97, then these claims would likely be preempted by CUTSA for the reasons stated above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

     Nor does the rest of the FAC provide the required "factual content." The Court has reviewed the FAC, and determined that the FAC's factual allegations regarding defendants' communications with New Show's clients are contained in the following five paragraphs:

- "As part of their ongoing scheme to damage [New Show's] reputation and divert business to TWV, Needle and Howe . . . also defamed [New Show] and one if its chief executives, Plaintiff Anthony Valkanas. Using a pseudonym, Needle informed [New Show's] clients that his employer was defrauding them. Howe made similar comments to countless [New Show] clients, and claimed falsely that Valkanas was not to be trusted because he had committed a double homicide." FAC ¶ 4.

- "In or around late 2013, [New Show began receiving hostile email from Howe. Based on these communications, it was clear the Howe had been corresponding with [New Show's] clients and attempting to persuade them to breach their agreements with [New Show]. Howe also claimed to have "inside information" on [New Show's employees and indicated he was actively seeking to defame the company." Id. ¶ 19

- "Defendants then used the stolen information to contact [New Show's] clients, encourage New Show's clients to violate the terms of their contracts with [New Show, and divert the clients' business to one of [New Show]'s primary competitors, TWV. Defendants' sole intention was to divert [New Show]'s business to its competitor, TWV." Id. ¶ 26.

- "In his private communications with [New Show's] clients, Howe confirmed that he had access to an entire list of [New Show's] clients, including their names, physical addresses and contract terms." Id. ¶ 27.

- "In his communications with [New Show's] clients, Howe also repeated the spurious claim that Valkanas was guilty of committing a double homicide. Like his other statements to [New Show's] clients, this claim is patently and obviously false." Id. ¶ 28.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                      'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Paragraph 27 is irrelevant to these three claims.  Similarly, paragraphs 19 and 26, which accuse defendants of contacting New Show's clients and encouraging those clients to break ties with New Show, simply assert that defendants committed the torts at issue here: they do not provide any "factual content" to substantiate that accusation.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

That leaves paragraphs 4 and 28.  Beginning with paragraph 4, here plaintiffs provide slightly more factual content about defendants' alleged communications with New Show's clients: the FAC alleges that defendant "informed [New Show's] clients that [New Show] was defrauding them."  But the Court concludes that this single allegation, standing alone, fails to "nudge[] [New Show's] claims across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

This is all the more true because, as the FAC expressly recognizes, the gravamen of these allegations is that defendants "defamed" New Show.[6]  See FAC ¶ 4.  But when alleging defamation, "The words constituting [the defamation] must be specifically identified, if not plead verbatim."  Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1314 (N.D. Cal. 1997) (quoting Chabra v. S. Monterey County Memorial Hospital, Inc., 1994 WL 564566 at *6 (N.D. Cal. 1994)).  "While the exact words or circumstances of the slander need not be alleged to state a claim for defamation, the substance of the defamatory statement must be alleged."  Id.  "Even under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient."  Jacobson v. Schwarzenegger, 357 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004)  Under this standard, plaintiffs' general allegation that defendants' accused New Show of being "fraudulent" does not plead the allegedly defamatory statement with the required specificity.[7]  Cf. Qualls v. Regents of

_____

[6] As discussed below, the FAC asserts a separate claim for defamation, based on allegations that plaintiffs falsely accused Valkanas of being involved in a double homicide.

[7] The Court notes that plaintiffs have attached several allegedly defamatory emails written by plaintiffs to their opposition to defendants' Anti-SLAPP motion to strike.  See, e.g., Valkanas Decl. Ex. C-H.  Although these emails provide significantly more factual detail about the statements at issue, they were not attached to the FAC, and thus do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

Univ. of California, 2013 WL 4828587, at *8 (E.D. Cal. Sept. 6, 2013) (finding that allegations of defamatory statements concerning "poor performance," "dishonesty," and "insubordination" were insufficiently specific).

Finally, the Court turns to plaintiffs' allegation that defendants lied to New Show's clients by telling those clients that Valkanas had been investigated for murder. Although this allegation provides more factual detail than the other allegations discussed above, it is not sufficient, standing alone, to state a claim under any of the three claims at issue here. Because the allegation focuses on the personal conduct of Valkanas, it does not plausibly assert "intentional acts on the part of the defendant designed to disrupt [a contractual] relationship," as required to assert a claim for intentional interference with contractual relations. CRST Van Expedited, Inc., 479 F.3d at 1105. For the same reasons, the allegation does not support a claim for intentional interference with prospective economic advantage. Finally, the allegation that defendants falsely accused Valkanas of being investigated for a double homicide does not support a claim for trade libel. "Unlike classic defamation, [trade libel is] not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." Aetna Cas. & Sur. Co., Inc., 838 F.2d at 351.

## G. Negligent Interference with Prospective Economic Advantage

Plaintiffs also assert a claim for negligent interference with prospective economic advantage. This claim appears to be premised on the same allegations underlying plaintiffs' claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and trade libel.

The Court finds that plaintiffs have not stated a claim for negligent interference with prospective economic advantages. First, for the reasons stated above in Section IV.G, the FAC does not set forth sufficient factual allegations to support the claim. Second, with respect to defendant Howe, plaintiffs have not alleged that he owes plaintiffs a duty of care.

---

bear on this Court's analysis of whether the FAC states a claim under Rule 12(b)(6). See In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

"The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1313 (N.D. Cal. 1997).   In J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 804 (1979), the California Supreme Court outlined the following criteria for determining whether defendants owe plaintiff of duty of care: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."

Here, the FAC contains no allegation that Howe was in a special relationship with the plaintiffs.  Plaintiffs' opposition attempts to salvage this omission by alleging that Howe had a special relationship with plaintiffs because it was foreseeable that his comments would harm the plaintiffs.  The Court finds this unpersuasive.  "A 'special relationship' typically arises where the plaintiff is a beneficiary of a contract between two parties."  Silicon Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1313 (N.D. Cal. 1997).  Here, plaintiffs do not allege that they are a third party beneficiary of any contracts involving Howe.  Nor do plaintiffs cite any cases in which an individual was held to be in a special relationship with a plaintiff simply because he made comments about that plaintiff.  Accordingly, the Court finds that plaintiffs have not properly alleged that Howe is in a special relationship with them, as required to state a claim for negligent interference with prospective economic advantage.

## H. Defamation

Plaintiffs assert a claim for defamation per se against defendant Howe.  This claim alleges that Howe falsely accused plaintiff Valkanas of committing a double homicide.  Defendants do not contest the legal sufficiency of this claim, instead asserting that plaintiffs have "no probability of success" under the California Anti-SLAPP statute.  Mot. Strike 24-25.  As explained above, however, the Court does not reach the merits of defendants' Anti-SLAPP motion, and thus declines to strike plaintiffs' claim for defamation at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 | |
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | | |

**I. State and Federal False Advertising**

Plaintiffs assert claims for false advertising, both under the federal Lanham Act and the state FAL. The Court begins with plaintiffs' Lanham Act claim. In order to state a claim for false advertising under § 43(a) of the Lanham Act, a plaintiff must allege "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

The Court finds that plaintiffs have not stated a claim for false advertising under the Lanham Act, for two reasons. First, for the reasons stated above, plaintiffs have not sufficiently pled "a false statement of fact." Second, plaintiffs have not alleged that defendants made any "commercial advertisment[s]." "In order for representations to constitute 'commercial advertising or promotion' under [the Lanham Act, they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services, [and (4)] be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999). Here, the FAC does not allege that the statements were made "by a defendant who is in commercial competition with plaintiff." Nor does the FAC allege that any statements were "disseminated sufficiently to the relevant purchasing public" to constitute advertising.

Plaintiffs object, on two grounds. First, they assert that, after Needle left his employment with plaintiffs, he founded a competing business, "Jimm Needle Media Productions," which competes with plaintiffs. But this allegation is entirely absent from the FAC. Opp. Strike 21-22. Indeed, the FAC specifically alleges that "[d]efendants' statements to [New Show]'s clients . . . were . . . made for the purposes of commercial advertising of TWV's services . . . ." FAC ¶¶ 116. Second, plaintiffs contend that the statements constituted false advertising on behalf of TWV. But the FAC does not allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

that defendants are employed by TWV, and thus these statements would not constitute representations "by a defendant who is in commercial competition with plaintiff[s]." Coastal Abstract Serv., Inc., 173 F.3d at 735.  Accordingly, the Court concludes that plaintiffs have failed to state a claim under the Lanham Act, and therefore turns to plaintiffs' claim under the FAL.

To plead a claim for false advertising under the California FAL, a plaintiff must allege that a defendant publicly disseminated advertising that false or misleading, and which the defendant knew or reasonably should have known was untrue or misleading. Cal. Bus. & Prof. Code § 17500.  "This provision has been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig., 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (quotations omitted).

Plaintiffs' FAL claim fails for much the same reason as their Lanham Act claim, namely that the FAC fails to adequately allege either (1) the statements at issue or (2) that defendants engaged in advertising.  Plaintiffs cite no authority for the proposition that a consumer can violate the FAL simply by criticizing another's products or services, and the Court has not located any.  See generally Witkin, Summary of Cal. Law Equity § 109 (10th ed. 2005).

## V.    CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss is hereby GRANTED IN PART and DENIED IN PART.  Defendants' motion for a more definite statement is DENIED.  Defendants' Anti-SLAPP Motion to Strike is DENIED WITHOUT PREJUDICE.  Defendants' motion in the alternative to dismiss pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART.  Specifically, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | June 30, 2014 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC ET AL. V. JIMM NEEDLE ET AL. | | |

dismisses without prejudice under Rule 12(b)(6) claims 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 13, 14, and 15.  Plaintiffs shall have leave to file an amended complaint no later than **July 14, 2014**, that corrects the deficiencies identified in the claims dismissed herein.

IT IS SO ORDERED.

|  | 00 | : | 16 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |