UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL       'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**  (IN CHAMBERS) - DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Filed August 1, 2016, Dkt. 162)

(IN CHAMBERS) PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMS (Filed August 1, 2016, Dkt. 163)

## I.    INTRODUCTION

On February 19, 2014, plaintiffs New Show Studios LLC ("New Show"), Anthony Valkanas, and Davison Design & Development, Inc. ("Davison Design") filed this action against defendants James Needle and Greg Howe ("defendants" or "counter-claimants").

On April 21, 2014, the plaintiffs filed their First Amended Complaint alleging seventeen claims against defendants.  Dkt. 10.  On June 30, 2014, the Court dismissed claims 1-7, 9, 10, and 13-15 without prejudice. Dkt. 31.  On July 14, 2014, plaintiffs filed their second amended complaint, alleging twelve claims against defendants.  Dkt. 32.  On December 29, 2014, the Court dismissed claim number nine with prejudice and granted defendants' motion to strike claims one, four, five, six, eight and ten. Dkt. 51.  On January 21, 2015, the Court granted a stipulation permitting plaintiffs to file a Third Amended Complain.  Dkt. 55.  Plaintiffs filed their Third Amended Complaint on February 16, 2015, alleging five claims against the defendants.

On March 3, 2015, defendants filed their Answer to the Third Amended Complaint as well as six counterclaims.  Four of defendants' counterclaims are against New Show[1].

---

[1]Davison Design and Valkanas have notified the Court that New Show has filed for bankruptcy.  The Court notes that the operative complaint, does not list New Show as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

The remaining two counterclaims, claims five and six, are alleged against all three plaintiffs[2] for (5) Slander Per Se and (6) Intentional Interference with Prospective Economic Advantage.

On November 19, 2015, the Court granted plaintiffs leave to file a Fourth Amended Complaint, deleting one of their five then-existing claims. On November 19, 2015, plaintiffs filed the operative Fourth Amended Complaint ("FAC"). Dkt. 126. The FAC asserts four claims. The first two, asserted by Valkanas against Howe, are for (1) False Light Invasion of Privacy and (2) Defamation Per Se. The third claim, asserted by Davison Design against Needle, is for Copyright Infringement in violation of 17 U.S.C. §§ 501, et seq. The fourth claim, asserted against Needle[3], is for (4) Trademark Infringement, in violation of 15 U.S.C. §§ 1125(a), et seq.

On August 1, 2016, defendants filed a Motion for Partial Summary Judgment seeking summary judgment with respect to plaintiffs' first, third, and fourth claims, and the alleged right to special damages arising under their first and second claims. Dkt. 162. That same day, August 1, 2016, counter-defendants filed a Motion for Summary Judgment with respect to counter-claimants claims five and six. Dkt. 163. On August 8, 2016, the parties each filed their respective oppositions. Dkt. 170, 173. On August 22, 2016, the parties each filed their respective replies. Dkt. 177-78.

---

plaintiff in the case, however, defendants have six counterclaims pending against New Show. For purposes of this order, the Court refers to Valkanas and Davison Design as "plaintiffs" or "counter-defendants."

[2]Defendants' counterclaims state that they are "Against All Defendants." The Court assumes this was intended to mean all counter-defendants or all plaintiffs. Furthermore, the counterclaims do not state on whose behalf they are alleged. However, there are no allegations regarding injuries to Howe or alleged illegal acts affecting Howe. Therefore, for purposes of this motion, the Court assumes counterclaims five and six are alleged by Needle against all plaintiffs.

[3]The FAC is not clear which plaintiffs assert the trademark infringement claim. During a hearing on the matter, held August 29, 2016, defense counsel acknowledged that the trademark claim is alleged only by Davison Design because Davison Design alleges ownership of the "Dare to Invent" mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL            'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title    | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

On August 29, 2016, the Court heard argument from the parties regarding the two pending summary judgment motions.  Prior to the hearing, the Court disseminated a tentative minute order.  Thereafter, the Court invited the parties to submit supplemental briefs, in light of the Court's tentative order, presenting any additional evidence in support of their motions.  On September 6, 2016, plaintiffs filed a supplemental brief. Dkt. 185.  On September 12, 2016, defendants filed a supplemental brief.  Dkt. 193.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND[4]

Needle is a former employee of Davison Design and later George Davison Studios ("Davison Studios").  While working for both companies, Needle produced short videos on behalf of Davison Design, Davison Studios, and New Show.  Davison Studios and New Show are "sister compan[ies]."  FAC ¶ 17.  Valkanas is the president of New Show, which sells short promotional videos for customers with an idea for a new television show.  Id. ¶ 7.

In February 2012, Needle finished producing a "Dare to Invent" video for Davison Design, which Davison Design posted to its YouTube page.  Needle operates a website, JimmNeedle.com, where he lists his resume, biography, and numerous examples of videos and media that he has worked on.  Needle posted videos on his website using YouTube's embedded player, including two "Dare to Invent" videos he helped produce for Davison Design.  The videos on Needle's portfolio page were labeled with the "Dare to Invent" mark in their thumbnails images.  Each "Dare to Invent" video also contained a watermark and a production tag at the end identifying Davison Design as the copyright owner.  The only place on Needle's website where the "Dare to Invent" mark appeared was in the posted videos and the videos' respective thumbnails.  Clicking on either videos' thumbnail in the embedded YouTube player would take viewers directly to Davison Design's YouTube page.  Sometime between December 2012 and April 2013,

---

[4] Except where otherwise noted, the following facts are undisputed and drawn from the parties' respective factual submissions and responses in relation to each motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|--------------------------|------|--------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Needle transitioned from working for Davison Design to Davison Studios.  In April 2013, Needle quit working at Davison Studios.  Neddle Depo. 23:25-24:2.

In mid-January 2014, Needle switched from using YouTube's embedded player to hosting the two "Dare to Invent" videos on his website using a different video streaming service called Vimeo.  The two videos were the "Brownie Bowl" and "Twister Caps" videos.

Needle conducts freelance work producing video content.  In addition to JimmNeedle.com , Needle also runs a separate website for his video production company, Always Delightful Films.  The parties dispute whether Needle advertises his freelance work through JimmNeedle.com or exclusively through AlwaysDelightfulFilms.com.  At the bottom of JimmNeedle.com, Needle lists Always Delightful Films as one of his "partners," and states, "Jimm Needle is a Media Producer and Director. He can be hired as an independent contractor . . . Contact Jimm if you are in need of a Producer, Director, Editor, Web Developer, Motion Graphics Artist, Director of Photographer [sic], or Social Media Manager."  Plaintiff Oppo. Ex. C.

Davison Design contends that Needle gained freelance work as a result of his use of its "Dare to Invent" mark on his website.  Needle testified that, after he left Davison Studios, he "might have had a couple of freelance jobs here and there."  Needle Depo. pg. 36:7-10.  On February 8, 2014, Needle removed the "Dare to Invent" videos from his website and replaced them with newer, unrelated projects on which he worked.  At the time of their removal, the "Brownie Bowl" video had been viewed seven times through Vimeo and "Twister Caps" had been viewed four times.  Neither party offers evidence of how many times the "Dare to Invent" mark may have been viewed in the thumbnails for each video.  George Crompton, Davison Design's general counsel and 30(b)(6) deponent, testified that, in 2012, Davison Design suffered a period of lost sales, "greater in degree" than in the past.  Crompton Depo. 61:5-13, 63:14-64:17.

Davison Design registered a copyright in the two aforementioned "Dare to Invent" videos in December 2015, nearly two years after filing this case.

After Needle ceased working for Davison Studios in April 2013, he began posting comments online about his concerns that New Show was committing fraud against its customers.  Needle met Howe online after Needle posted comments on a YouTube video about an alleged scam by New Show.  Needle spoke with Howe in the hope of further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

encouraging Howe to share information with law enforcement regarding their shared belief that New Show was a scam.  Needle also gave Howe the names of three former New Show clients whom Needle believed had been victims of New Show's alleged scam.

Howe posted warnings online, notifying others that he believed New Show was a scam.  In addition to his online statements about New Show, Howe exchanged emails with Horace White.  The parties dispute the precise language used and Howe's intent when he spoke with White, but the gravamen of Valkanas's allegations is that Howe told White that Valkanas was being investigated by law enforcement in relation to two deaths.  During his deposition, Howe testified to having told White that Valkanas was being investigated for a "double homicide."  Howe Depo. at 125:19-21.

Howe further testified that, at the time he told White that Valkanas was under investigation, he believed White would use it as leverage against Valkanas.  Id. at 105:4-14.  White forwarded an email from Howe stating Valkanas was a homicide suspect to an undetermined number of people in Valkanas's office.  Valkanas Depo. at 107:16-24.  Regarding the content of White and Howe's emails, plaintiffs direct the Court to an alleged copy of the allegedly defamatory emails, originally sent from Howe to White.  Plaintiffs Suppl. Ex. A.  In the alleged email chain between Howe and White, Howe asked White, "did anything come out about Valakanas murder investigation [sic]."  Plaintiffs Suppl. Ex. A at 3.  In reply, White did not acknowledge Howe's "murder" question.  Thereafter, Howe stated, "that homicide I told you about, was a double homicide, feel free to tell Valkanas every thing I say, I believe in a fair war, and I want him to know what is coming his way."  Id. at 2.  The email appears to have been forwarded by White to Chadd Murray, who then forwarded it to Valkanas.  Id.

On February 10, 2014, George Davison, the president of Davison Studios (and Davison Design), called a meeting of employees whom he managed ("the February meeting").  The parties dispute whether the employees at the meeting were employees of Davison Design, Davison Studios, New Show, or all three.  The parties also dispute what Davison said during this meeting.  At some point therein, Davison explained why salaries for all the employees of Davison Studios were being cut.  Needle alleges that Davison told New Show employees that (1) Needle had taken clients from them, (2) had taken confidential information or trade secrets, and (3) that Needle was a reason for their collective decrease in pay in early January 2014.  Needle alleges that Davison threatened or implied that company employees would be fired for speaking to Needle.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Sometime in 2013, Needle began negotiations to build a website for one of Davison Studios' employees, Michael Reid. As of February 10, 2014, Needle had not built the website or negotiated a price for the project. Needle never built the website. The parties dispute whether or not George Davison's comments during the February 10, 2014, meeting interfered with Needle's development of the Reid website or whether the Reid family decided not to pursue the website prior to the February meeting.

On June 27, 2014, Needle applied for a job at Carnegie Mellon University. On July 8, 2014, Needle interviewed for the position remotely. Needle had an in-person interview on July 22, 2014. Needle did not receive the job. Needle alleges, and plaintiffs dispute, that he did not receive the job at Carnegie Mellon because a Davison Design employee interfered with Needle's prospective employment and other business opportunities by telling Carnegie Mellon that Needle had stolen trade secrets.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 &

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## IV.  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants seek summary judgment with respect to plaintiffs' first claim (false light invasion of privacy), third claim (copyright infringement), fourth claim (trademark infringement), and right to special damages arising under the first and second claims (defamation per se).  Dkt. 162.[5]  The Court will address each claim in turn.

---

[5]The parties in their respective motions assert that Pennsylvania law *may* govern some or all of the tort claims and counterclaims, but argue their motions by citing cases arising under both California and Pennsylvania law.  In a federal question action such as this one "involv[ing] supplemental jurisdiction over state law claims, [courts] apply the choice of law rules of the forum state-here, California."  Paulsen v. CNF Inc., 559 F.3d 1061, 1080 (9th Cir.2009).  California applies a three step "governmental interest" analysis in determining choice of law questions:

(1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest ... the court [must] identify and apply the law of the state whose interest would be more impaired if its law were not applied.

Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir.2001)(internal quotation marks omitted).  "[I]f the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable." Washington Mut. Bank, FA v. Superior Court, 24 Cal.4th 906, 920 (2001).  The parties have not argued any material difference (step one), let alone a conflict (step two), between the laws of California and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                     'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|--------------------------|------|---------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

**A.     False Light Invasion of Privacy**

The gravamen of Valkanas's false light invasion of privacy claim is that Howe caused Valkanas to face public scrutiny based on a false rumor that Valkanas was under investigation for a double-homicide.  Howe argues that he is entitled to summary judgment with respect to Valkanas's false light invasion of privacy claim because Howe only told one person that Valkanas was under investigation for a double-homicide.  A claim for false light invasion of privacy protects a person's "interest in being let alone and is available when there has been publicity of a kind that is highly offensive."  Prosser on Torts (5th ed.), 864.  The false light must derive from a "public disclosure and not a private one."  Id. at 856.  Accordingly, invasion of privacy torts must "be accompanied by publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few."  Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 9, 11 (5th Cir. 1962).

Howe contends that his communications did not cause widespread publicity for Valkanas because Howe only communicated with White.  Howe and White communicated via email.  In an email to White, Howe allegedly stated that Valkanas had been the subject of a double-homicide investigation. Plaintiffs Suppl. Ex. A.  Valkanas testified that White forwarded Howe's email "to the Office," Valkanas Depo. at 107:20-21, and that "[m]embers of my own staff" received White's email, Id. at 115:4-10.  Valkanas did not recall which staff members received the email.  Id.  In addition to his staff receiving White's email, Valkanas testified that his sales staff came to him "on a few occasions" about clients who had heard Valkanas was a homicide suspect.  Id. 125:15-126:15.  Valkanas did not speculate as to exactly how clients heard he was a homicide suspect, nor from whom they heard.  Other than the forgoing testimony, neither party identifies additional evidence showing to whom Howe communicated that Valkanas had been a homicide suspect.

---

the laws of Pennsylvania in regard to their claims.  Accordingly, the Court determines the claims based on California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

There is no admissible evidence that Howe did more than email White.[6]  In the context of a false light invasion of privacy claim, the requirement of publicity requires communication to the "public at large, or to so many persons that the matter must be regarded as *substantially certain* to become one of public knowledge."  Restatement (Second) of Torts § 652D (1977) (emphasis added).  Sending messages to a "handful of employees at a single agency" does not satisfy the requirement that the information be substantially certain to become public.  Armstrong v. Thompson, 80 A.3d 177, 189 (D.C. 2013).  Courts regularly reject false light invasion of privacy claims where the communications at issue were made to a group of employees in a single company.  See e.g. Strand v. John C. Lincoln Health Network, Inc., 2011 WL 1253408, at *5 (D. Ariz. Mar. 31, 2011) (granting a motion to dismiss for lack of publicity where defendant allegedly spoke with an indeterminate number of coworkers); Vinson v. Koch Foods of Alabama, LLC, 2013 WL 5441969, at *7 (M.D. Ala. Sept. 27, 2013) ("awareness on the part of a small number of co-workers is insufficient to state a claim"); Wells v. Thomas, 569 F. Supp. 426, 437 (E.D. Pa. 1983) ("a mere spreading of the word by interested persons in the same way rumors are spread").  Valkanas has presented no evidence suggesting that White's email reached more than an indeterminate number of his own employees and that "a few" clients heard the rumor from an unknown source.  Even viewed in the light most favorable to Valkanas, and assuming that Howe can be liable for White's dissemination of Howe's email, this evidence does not show that Howe's email exposed Valkanas to the *public*.

Accordingly, Howe's motion for summary judgment with respect to Valkanas's false light invasion of privacy claim is **GRANTED**.

---

[6] Valkanas also testified, in reference to alleged statements by Howe, that on "YouTube threads there was banter and replies and comments back and forth.  Quite frankly, after the initial E-mail, . . . I didn't really want to go there and see what [Howe] was engaging in . . . to this day, I've not gone back there."  Id. at 108:8-13.  Howe objects that Valkanas's statements about YouTube are inadmissible pursuant to Federal Rule of Evidence 1002, the best evidence rule.  The Court agrees.  Without evidence of their contents or who said them, Valkanas's statement in regard to YouTube "banter" is inadmissible to prove any content therein.  Accordingly, Valkanas's vague references to YouTube are inadmissible to support his defamation and invasion of privacy claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

### B.   Damages from Defamation

Valkanas's claim for defamation, like his claim for false light invasion of privacy, arises from Howe's alleged accusation that Valkanas was under investigation for a double-homicide.  Howe concedes there are material issues of disputed fact with respect to Valkanas's defamation claim.  Furthermore, Howe concedes that trial is appropriate with respect to damages for harm to Valkanas's reputation and any shame or hurt feelings Valkanas may have felt as a result, both of which, Howe concedes, are presumed. Defendant Mot. Part. Sum. Judg. at 20 (citing Cal. Civ. Jury Instr. 1704).  Howe asks for summary judgment only with respect to special damages, namely damage to Valkanas's business or trade.

The limited evidence offered by Valkanas for his lost business in association with Howe's alleged defamation is inadmissible.  Valkanas, New Show's president, testified that New Show lost business after Howe accused him of being a double-homicide suspect, and that "most of my stipend would come from commissions, but as sales dropped, the commissions dropped and salary maybe some months outweighed those commissions because of what was transpiring." Valkanas Depo. at 153:24-154:12.  There is no evidence linking the loss of customers to Howe's statements except Valkanas's speculative testimony:

A. I was asked on a few occasions specifically about the tragedy [from which the homicide rumor arose].
Q. Relating to phone calls with clients?
A. Yes.
Q. Can you identify those clients as you sit here today?
A. No. I can't. *They were not clients that I was in contact with.*
. . .
Q. Are you aware in any of those cases whether that client chose to cease doing business with New Show Studios?
A. That's why [client managers] were bringing it forward.
Q. Well --
A. They were paid on commission, so *they're bringing information to my desk that their clients fed back to them* as to why they decided not to do business.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title    | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Q. Do you remember anything else about those conversations with your
client managers . . .
A. I do not specifically.

Valkanas Depo. 125:20-126:24 (emphasis added).  Valkanas's statement that his
salespeople brought the murder rumor to his attention because they were losing sales
commissions is inadmissible speculation and outside his personal knowledge.  In an
earlier motion in this case, the Court ruled that analogous claims by Valkanas in a
declaration were inadmissible speculation.  Dkt. 51 at 19.  In his deposition, Valkanas
testified that he could not estimate how much of his lost income was the result of Howe's
statements and that he had no way to identify, specifically which sales he lost as a result
of Howe's statements.  Valkanas Depo. at 146:10-147:6, 124:13-125:14.

"The right to recover damages cannot be left to speculation." Patton v. Royal
Indus., Inc., 263 Cal. App. 2d 760, 768 (Ct. App. 1968).  A plaintiff cannot recover lost
revenue from defamation without evidence that his customers knew the defamatory
statements and chose not to purchase plaintiff's goods or services as a result.  DiGiorgio
Fruit Corp. v. AFL-CIO, 215 Cal. App. 2d 560, 577 (1963).

Valkanas offers no admissible evidence that a customer ceased doing business or
was otherwise influenced by Howe's statement to White about a double-homicide.
Accordingly, Howe's motion for summary judgment with respect to Valkanas's claim to
special damages for defamation is **GRANTED**.

## C.      Copyright Infringement

The allegations underlying Davison Design's copyright claim is that Davison
Design owned a copyright in two "Dare to Invent" videos and that Needle infringed upon
its copyrights when he placed those videos in his JimmNeedle.com portfolio.  "[A]n
infringer of copyright is liable for either– (1) the copyright owner's actual damages and
any additional profits of the infringer, as provided by subsection (b); or (2) statutory
damages." 17 U.S.C. § 504.  Needle argues that Davison Design's claim for copyright
infringement cannot proceed because there is no evidence that Davison Design is entitled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

to any remedy.  The Court discusses the availability of damages and injunctive relief below.[7]

### 1.     Statutory Damages or Attorney's Fees

"[C]ertain remedies, such as statutory damages and attorney's fees, are available only after registration."  Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 619 (9th Cir. 2010) (citing  in 17 U.S.C. § 412).  Under 17 U.S.C. Section 412, no award for statutory damages or attorney's fees:

> shall be made for: (1) any infringement of copyright in an unpublished work . . . or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

It is undisputed that Davison Design's "Dare to Invent" videos were first published to YouTube in February 2012.  See e.g. Getaped.Com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 400 (S.D.N.Y. 2002) (concluding website was "published" on the day it was first revealed to the public on the internet).  Davison Design does not argue a right to statutory damages in its opposition or seek them in the Fourth Amended Complaint.  It is undisputed that Davison Design did not apply for registration of its copyrights in the "Dare to Invent" videos until December 2015, substantially later than "three months after the first publication." 17 U.S.C. § 412.

---

[7] The Court notes the clear weight of authority that punitive damages are not available as a remedy for Copyright infringement.  Punishment and deterrence, under the Copyright Act is achieved through its statutory damages provisions and otherwise, "[a]s a general rule, punitive damages are not awarded in a statutory copyright infringement action."  On Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001), as amended (May 15, 2001) (citing Nimmer on Copyright § 14.02[B], at 14–23 to 24).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Accordingly, the Court concludes that, as a matter of law, Davison Design is not entitled to pursue statutory damages or attorney's fees for copyright infringement.

## 2.    Loss of Revenue from the Copyrighted Work

Needle next argues that there is no admissible evidence demonstrating Davison Design lost revenue as a result of the alleged copyright infringement.

Davison Design responds that it is entitled to a "presumption" of injury.  Plaintiff Oppo. at 17 (relying on Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134 (9th Cir. 1997)).  By juxtaposing their arguments about both the trademark and the copyright infringement claims, all of the parties have improperly conflated the two.  The two claims are subject to different rules and protect different rights in intellectual property. Southland Sod Farms dealt exclusively with violations of Section 43(a) of the Lanham Act, governing trademark violations.  Id. at 1138.  As discussed by the Court's section on the Trademark claim, the remedies and burdens in a trademark infringement claim differ from those of a copyright claim.  Specifically, the presumption in Southland Sod Farms dealt with the parties' respective burdens in proving "actual consumer confusion."  Id. at 1146.  Put simply, "confusion is not an element of a copyright cause of action." Patry on Copyright § 22:109.50.

"Actual damages," as contemplated by the Copyright Act, "represent the extent to which infringement has injured or destroyed the value of the work."  Nimmer on Copyright § 14.02[A], at 14–14 (2015); see also Frank Music Corp. v. Metro Goldwyn Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985).  The plaintiff bears the burden of showing "what revenue would have accrued to plaintiff but for the infringement."  Nimmer § 14.02[A][1] at 14–15.  "Once the plaintiff has met this burden of showing a causal connection, 'the burden then properly shift to the infringer to show that this damage would have occurred'" regardless.  Id. (quoting Harper & Row, Publishers, Inc. V. Nation Enters., 471 U.S. 539, 567 (1985)).

Davison Design has not satisfied its initial burden.  The court in Frank Music Corp. held that, "[a]lthough uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may." Frank Music Corp., 772 F.2d at 513.  Davison Design has failed to put forth any evidence that Davison Design might have earned more from the "Dare to Invent" videos, but for the alleged infringement.  Davison Design

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

presents no evidence that it lost sales of its "Dare to Invent" videos. The videos were products for clients whom Davison Design had already charged for the videos. Davison Design does not argue it was its practice to resell unique works produced for a single paying client. Furthermore, the two videos at issue are visible for free on Davison Design's own YouTube page. Nor is the Court obligated to entertain purely speculative arguments that rights to the works might have been sold in the future. See e.g. Frank Music Corp, 772 F.2d 505 (there were no actual damages where actual damages were premised on the assertion, without evidence, that a copyrighted play might have been produced in the future).

Here, Davison Design's only evidence of losses is the conclusory testimony of its general counsel. Plaintiff Statement of Genuine Dispute at 57-58. Crompton testified that:

> [Needle's] misuse, their infringement has created confusion as to the ownership of [the Dare to Invent videos], as to who provides the services described in them, as to how one might go about accessing the services described, and *the company believes* that this has contributed to a downturn in sales during that time period.

Crompton Depo. 44:20-25 (emphasis added). However, "[c]opyright is not tied to source identification or confusion in the market, but rather to an original work of authorship that is infringed by a violation of an exclusive right." Patry on Copyright § 22:108.

Having reviewed Crompton's deposition, the Court concludes that his statements are inadmissible. Davison Design has provided no foundation for Crompton's opinions or knowledge. Crompton testified that he did not know the timing of Needle's alleged infringement. Id. at 59:18-60:8 ("we don't know when they were up. So I can't testify to a temporal relationship"). Crompton was unable to say when in 2012 the sales decline began, Id. 68:22-69:5, or estimate when, if at all, it ended, Id. 63:3-6. Crompton further testified that, although he did not know when the "Dare to Invent" videos were on Needle's website, "the company . . . *would assert* there was harm at *whatever time* he had the videos up." Id. at 58:25-59:5 (emphasis added). If, at the time of his deposition, Crompton had no basis to know the dates of the alleged infringement or the timing of lost sales, his opinion that the two were temporally linked is speculation. Even if Crompton knew, in fact, that sales declined during the period Needle had "Dare to Invent" videos on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

his website, any claimed connection between the two events would still be speculation without more.  The Court concludes that Crompton's testimony linking losses to alleged copyright infringement is speculative and beyond his personal knowledge.  It is therefore inadmissible for purposes of the present motion.

There is no evidence Davison Design would have otherwise earned revenue from the "Dare to Invent" videos, but for the alleged infringement.  Furthermore, the existing testimony that other sales were hampered by alleged infringement is inadmissible speculation.  For both of these reasons, the Court finds that there is no evidence to show that Davison Design lost profits as a result of any alleged copyright infringement.

### 3.    Needle's Profits from Alleged Infringement

Next Needle argues that Davison Design cannot demonstrate that Needle profited from the alleged infringement.  There is no evidence that Needle sold the "Dare to Invent" videos.  However, Davison Design may attempt to recover profits Needle made from advertising using the "Dare to Invent" videos.  See Nimmer § 14.03[B][2][b] at 14–50.2(1).  The parties dispute whether Needle used the "Dare to Invent" videos to advertise the sale of Needle's services.  However, the Court need not resolve this conflict.  Even if Needle's use of the works in his portfolio was advertising for his video production services, there is no evidence that the "Dare to Invent" videos, among the many in Needle's portfolio, increased Needle's revenue.

"The modern cases more frequently deny profits earned from advertising" where plaintiff fails to "articulate a non-speculative correlation" between the infringement and defendant's revenue.  Id. (citing Mackie v. Rieser, 296 F.3d 909 (9th Cir. 2002), cert. denied, 537 U.S. 1189 (2003).  In Mackie, the Ninth Circuit affirmed a grant of summary judgment in favor of the Seattle Symphony under facts analogous to this case.  After the Seattle Symphony sent out a brochure to 150,000 people containing a picture of the plaintiff's copyrighted work, the plaintiff sought a portion of the symphony's increased revenue.  Id. at 912.  The plaintiff presented expert testimony that "1.5%" of the symphony's revenue was attributable to its use of the picture.  Id. at 913. The district court determined that the expert's testimony was too speculative as a matter of law.  Id. The Court of Appeals agreed, noting:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

we can surmise virtually endless permutations to account for an individual's decision to subscribe to the Pops series, reasons that have nothing to do with the artwork in question. For example, was it because of the Symphony's reputation, or the conductor, or a specific musician, or the dates of the concerts, or the new symphony hall, or the program, or the featured composers, or community boosterism, or simply a love of music, or ... ? In the absence of concrete evidence, Mackie's theory is no less speculative than our effort in this paragraph to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions.

Id. at 916. The court held that "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." Id. at 915–16.

In contrast to Mackie, the Court here is not presented with expert testimony. Davison Design offers only two pieces of testimony to show the Needle profited from his alleged infringement, namely, Needle's own testimony that he "may have had freelance jobs here and there" after he left Davison Design and that, at some undetermined time, he had a marketing position with a dentist. Needle Depo. at 6:6-9, 36:7-10. However, as in Mackie, Davison Design offers no non-speculative evidence that the alleged infringement indirectly generated Needle's freelance work. Like the brochure in Mackie, Needle allegedly used the "Dare to Invent" works to generate business for himself. As with a brochure, Needle's portfolio contains numerous elements to attract customers, not just the two allegedly infringing videos. The works were used in conjunction with other works as part of Needle's portfolio. To show a connection between Needle's use of the works and his undetermined freelance work, Davison Design offers Crompton's testimony that Needle's use of the "Dare to Invent" videos on his portfolio was confusing. However, in contrast to the 150,000 people who received the brochure in Mackie, the only evidence of how many people viewed the videos on Needle's website is evidence that they garnered a total of 11 views during three weeks in 2014. There is no evidence that a single customer of Needle's visited JimmNeedle.com at all. The Court need not speculate as to the myriad reasons a customer might have hired Needle for freelance work between 2012 and 2014. Because the Davison Design has not offered any non-speculative evidence that the "Dare to Invent" videos generated profits for Needle, the Court finds that Davison Design

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

has failed to raise a material issue of disputed fact showing that Needle profited from the alleged copyright infringement.

### 4.    Injunctive Relief

Finally, the parties dispute whether or not Davison Design may be entitled to injunctive relief.  The Supreme Court has "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies."  Weinberger v. Romero Barcelo, 456 U.S. 305, 312 (1982).   In a copyright case, "irreparable harm may not be presumed."  Patry on Copyright § 22:74.  This Court may grant injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).

The parties do not dispute that Needle removed the alleged infringing videos from his website on February 8, 2014.  Furthermore, Needle has offered to stipulate to an injunction enjoining him from ever hosting any "Dare to Invent" video on any website, "so long as that would have no bearing on his right to seek attorney's fees as a prevailing party."  Defendants Undisputed Facts at 74.  Davison Design states that it will not agree to enter into such a stipulation.  Plaintiffs Genuine Disputes at 74.

The copyrighted works at issue are available to view, for free, on Davison Design's own YouTube page.  Accordingly, the Court finds no material issue of disputed fact demonstrating an irreparable injury to Davison Design's copyrighted work.  Furthermore, this is not a situation where there is any suggestion that the alleged infringement will be repeated.  Where the defendant has ceased the alleged improper activities, courts have granted summary judgment with respect to injunctive relief.  See e.g. Larsen v. U.S. Navy, 525 F. 3d 1, 4 (2008) (concluding that an injunction order would accomplish nothing, absent evidence that the Navy planned to reinstate an unconstitutional policy); Luxul Tech. Inc. v. NectarLux, LLC, 2016 U.S. Dist. LEXIS 78899, at *44 (N.D. Cal. June 16, 2016) (Koh, J.) (in a copyright case, "the undisputed evidence shows that [defendant] has already removed and destroyed all of the allegedly infringing materials, such that [plaintiff's] request for injunctive relief is now moot").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                           **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Based on the foregoing, the Court concludes that Davison Design is not entitled to monetary or equitable relief. Accordingly, the Needle's motion for summary judgment with respect to Davison Design's copyright claim is **GRANTED**.

### D.     Trademark Infringement

Davison Design's trademark claim derives from Needle's use of the "Dare to Invent" mark in association with JimmNeedle.com.[8]  Needle seeks summary judgment on several bases, namely, that the Davison Design is not entitled to any relief, that Needle's use is protected by the fair use doctrine, and that Needle does not use JimmNeedle.com to sell goods.

### 1.     Sale of Goods

Use of a trademark does not violate the Lanham Act unless it is used "in connection with a sale of goods or services."  <u>Bosley Med. Inst., Inc. v. Kremer</u>, 403 F.3d 672, 677 (9th Cir. 2005).

Needle argues that he only uses alwaysdelightfulfilms.com to market his freelance work.  Davison Design presents evidence that, at the bottom of JimmNeedle.com, Needle lists Always Delightful Films as one of his "partners," and states, "Jimm Needle is a Media Producer and Director. He can be hired as an independent contractor . . . Contact Jimm if you are in need of a Producer, Director, Editor, Web Developer, Motion Graphics Artist, Director of Photographer [sic], or Social Media Manager."  Plaintiff Oppo. Ex. C.  Furthermore, Davison Design presents evidence that, near the middle of JimmNeedle.com, the webpage has a section entitled "How can Jimm help you?" followed by four subject headers and sentences:

(1) Video Production
Need a video?  Jimm will help you create one from the ground up.
Customized to help your company reach their goals.

---

[8] The FAC does not state on whose behalf the trademark infringement claim is made.  The Court assumes that Davison Design is the sole plaintiff alleging ownership in the "Dare to Invent" mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|---------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

(2) Editing and Motion Graphics
Have footage but no editor?  Jimm will edit your footage to match the video
you designed through preproduction.

(3) RED Cinema Digital Camera
Jimm owns, operates and rents out his own RED Digital Cinema Camera.  A
lens package and other gear is also available.

(4) Communicate your Brand
Need someone to run your social media and create websites and graphical
assets to support your brand?  Jimm can help.

Id.  These statements on JimmNeedle.com create a material issue of disputed fact as to
whether Needle used JimmNeedle.com and the "Dare to Invent" mark to sell goods and
services.

### 2.    Fair Use

The fair use defenses under copyright law and trademark law are distinct.  With
respect to Davison Design's trademark infringement claim, Needle's fair use arguments
are misplaced.  There are two fair use defenses recognized in the Ninth Circuit in a
trademark claim, namely, the classic fair use defense, codified in the Lanham Act at 15
U.S.C. Section 1115(b), and the nominative fair use defense, developed in New Kids on
the Block v. News Am. Pub., Inc., 971 F.2d 302, 306 (9th Cir. 1992).  See Cairns v.
Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002) (describing both and their
development).

Under the classic defense, a "junior user is always entitled to use a descriptive term
in good faith in its primary, descriptive sense other than as a trademark." Cairns, 292 F.3d
at 1150 (citing McCarthy on Trademark and Unfair Competition § 11:45 (4th ed. 2001)).
To demonstrate a nominative fair use defense, the infringing party must show that the
service being sold is not readily identifiable without use of the mark, that they have only
used so much of the mark as necessary to identify the product, and that they have done
nothing to suggest sponsorship or endorsement by the trademark owner.  New Kids on
the Block, 971 F.2d at 308.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

In this case there are material issues of disputed fact as to whether either defense could apply to the trademark claim. "In our Circuit, the classic fair use defense is not available if there is a likelihood of customer confusion as to the origin of the product." Cairns, 292 F.3d at 1151. Having reviewed evidence of JimmNeedle.com presented by the parties, the Court finds a material issue of disputed fact as to whether Needle's use of the "Dare to Invent" mark was likely to cause confusion. Needle nowhere argues that his fair use defense is a nominative one. Furthermore, the Court finds a material issue of disputed fact as to whether his use of the "Dare to Invent" mark suggested endorsement or sponsorship by Davison Design.

### 3.    Availability of Relief

Needle raises identical arguments with respect to damages and equitable relief under the trademark claim that he raises under the copyright claim. Although the Court grants summary judgment with respect to the copyright claim, the Court declines to do so with respect to the trademark claim.

"Trademark law aims to protect trademark owners from a false perception that they are associated with or endorse a product." Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 806 (9th Cir. 2003). Both trademark law and copyright law permit a plaintiff to seek any profits earned through infringement of their intellectual property rights. However, trademark law places a different burden on defendants than copyright law with respect to their profits. Where the owner and alleged infringer are competitors, courts presume that the infringer's profits "consisted entirely of profits on sales that would have been made by plaintiff but for the infringing actions."[9] McCarthy on Trademarks and

---

[9] Needle argues that he is not in competition with Davison Design because Davison Design's "own website confirms that it helps consumers patent and prototype their inventions, and license them to retailers." Defendants Suppl. at 2. However, Needle has not presented admissible evidence of Davison Design's website or purported business. It is the moving party's burden to present undisputed facts, supported by admissible evidence, entitling them to summary judgment. Needle has not presented undisputed facts of what Davison Design sells. Furthermore, the Court finds a material issue of disputed fact as to whether JimmNeedle.com sold services. Accordingly, it appears there is a material issue of disputed fact regarding whether or not Needle's website was in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Unfair Competition § 30:59 (4th ed. 2001) (citing the Restatement (Third) of Unfair Competition § 37 (1995)). In contrast to the Copyright Act, the Lanham Act explicitly places the burden on the defendant to produce evidence that revenue *was not* derived from the infringement. 15 U.S.C.A. § 1117(a) ("[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed").

As discussed above, Needle testified that he, "might have had a couple of freelance jobs here and there," after he left Davison Design and during the period at issue in this case. Needle Depo. pg. 36:7-10. This evidence shifts the burden to the Needle to show his freelance work was not derived from his use of the "Dare to Invent" mark. Needle has not attempted to do so. Instead, Needle contends that "[d]uring the entire period from February 2012 through February 2014, [he] did not obtain any part-time or full-time jobs." Defendant Statement of Undisputed Facts at 20. Based on this evidence, the Court finds a material issue of disputed fact as to whether Needle obtained freelance work and which, if any, of that work should be attributed to Needle's use of the "Dare to Invent" mark. Accordingly, Davison Design may still be entitled to recover Needle's revenues during the period of infringement.

There are material issues of disputed fact with respect to Needle's sale of services through JimmNeedle.com, the applicability of a fair use defense, and whether any of Needle's freelance work can be attributed to the Dare to Invent mark on his webpage. Accordingly, Needle's motion for summary judgment with respect to Davison Design's trademark infringement claim is **DENIED**.

## V.   PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs seek summary judgment with respect to Needle's[10] fifth and sixth counterclaims for slander and intentional interference with prospective economic advantage. The Court addresses each in turn.

---

competition with Davison Design at the time of the alleged trademark infringement.

[10] As already noted, the fifth and sixth counterclaims do not state on whose behalf they are made. For purposes of this motion, the Court assumes they are made by Needle against all the plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**              'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

**A.     Slander Per Se**

"A statement that falls within one of the first four categories of California Civil Code section 46 constitutes slander per se and does not require proof of actual damages." Duste v. Chevron Prod. Co., 738 F. Supp. 2d 1027, 1041 (N.D. Cal. 2010). California Civil Code section 46 provides four categories of slander per se, two of which are relevant here. Statements that charge a person with a crime are slander per se, Cal. Civ. Code § 46(1), as are statements that tend to injure a person in his office, profession, trade or business, "either by imputing to him general disqualification in those respects which the office . . . peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits," Id. § 46(3). Plaintiffs' challenge to the slander per se counterclaim is based on four arguments, namely, Needle's evidence of the slander is hearsay, the statements are not so offensive that they constitute slander per se, the statements were true, and that Davison was not speaking as an agent of any party to this case.

Needle's counterclaim for slander is based on alleged statements Davison made during a meeting with employees on February 10, 2014 ("the February meeting"). The only admissible evidence either party presents to show what Davison said during the February meeting is Karl Boettcher's deposition testimony. Boettcher claims to have been present at the February meeting. Boettcher was deposed on December 15, 2015. As an initial matter, Boettcher repeatedly expressed uncertainty about the exact words Davison used in the February meeting. However, even without the exact words, "slander can be charged by alleging the substance of the defamatory statement." Okun v. Superior Court, 29 Cal.3d 442, 458 (1981). The inquiry then becomes whether the "alleged statement conveyed a slanderous meaning." Id.

Having reviewed the Boettcher deposition testimony offered by the parties, the Court finds much of it ambiguous as to the actual words Davison used on February 10, 2014. Boettcher testified that Davison implied "in no uncertain terms that [Needle] was taking our clients and that was part of the reason why [employees were having their] pay cut," Boettcher Depo. at 80:7-9, and that Davison "said that we were losing clients and one notable reason why was because [Needle] was stealing our clients," Id. at 19:16-19. Boettcher later acknowledged, "I don't know if I can - I can give you absolute testimony that the word 'stealing' was used versus implied." Id. at 79:8-12. Boettcher testified:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

I should say that part of the reason why I don't remember the specifics of his language was a lot of us were thinking and trying to analyze what he was·saying . . . his explanation of Jimm stealing our clients being our reason for the 10 percent pay cut was of suspect [sic].

Id. at 81:16-22. Furthermore, Boettcher testified that Davison said something implying Needle had improperly sought and received information about clients from Don Fouts, an employee who was fired for the communicating with Needle. Specifically, Boettcher testified:

Q.··Did [Davison] refer to it as trade secret information?
A.··Yes.
Q.··So [Davison] said that Mr. Fouts had given Mr. Needle trade secrets - or trade secret information?
A.··Yeah.··In an indirect.··He didn't specifically·say, like, 'He gave him trade secrets.'··He said that there were communications between - that involved client information.

Id. at 21:11-18. Boettcher testified that Davison "said that we should not contact [Needle] at all and we should avoid him at all costs if we know him," Id. at 27:5-6, and that "[Needle] will get what's coming to him," Id. 92:11-12.

With respect to the admissibility of Davison's statements, relayed by Boettcher, the Court concludes that they are not hearsay. Under Federal Rule of Evidence 802, hearsay is inadmissible unless the statement of the declarant falls within defined exceptions. However, a statement is not hearsay if it is not offered to prove the truth of the statement. Fed. R. Evid. 801. Needle argues that Davison's statements are not offered for their truth. The Court agrees. Needle offers Davison's statements to prove that the statements were false. For instance, Needle does not offer Davison's allegation that Needle was stealing clients to prove Needle was stealing clients. Accordingly, Davison's statements are admissible.

There appears to be a material issue of disputed fact as to whether Davison's statements "conveyed a slanderous meaning." Okun, 29 Cal.3d at 458. California's slander statute permits a slander per se claim where the statement, imputes "something" to Needle with reference to Needle's profession "that has a natural tendency to lessen its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL    'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

profits." Cal. Civ. Code § 46(3). To constitute slander, the statements at issue must have "a tendency to expose [plaintiff] to 'hatred, contempt, ridicule, or obloquy,' or injury in [his] occupation." Lieberman v. Fieger, 338 F.3d 1076, 1081 (9th Cir. 2003) (quoting Copp v. Paxton, 45 Cal.App.4th 829, 839 (1996)).

At this stage, it is the moving parties' burden to present undisputed facts entitling them to judgment as a matter of law. According to Boettcher's deposition, Davison accused Needle of taking clients from his former colleagues, improperly taking information from New Show, and helping necessitate salary cuts. Based on Boettcher's deposition, the Court cannot conclude that counter-defendants are entitled to judgment as a matter of law. There appear to be disputed issues of material fact with respect to whether Davison's statements exposed Needle to hatred, contempt, ridicule, or injury in his occupation.

Next plaintiffs argue that Davison's statements at the February meeting were true and therefore cannot constitute slander. It is undisputed that the company's salary decrease took effect on January 1, 2016. It is also undisputed that Needle did not seek or share company client information until January 29, 2016. Whether or not Needle was actually taking clients from Davison Design and whether those alleged acts necessitated a salary cut appear to be, at least, material issues of disputed fact.

Finally, plaintiffs argue that during the February meeting, Davison was not speaking as an agent of any party to this case such that New Show, Davison Design, or Valkanas could be liable. "[I]f an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement." Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp., 456 U.S. 556 (1982).

There is evidence suggesting that the attendees thought the meeting was on behalf of New Show or Davison Design. For instance, Boettcher testified that the meeting began as a "pep talk for our department, which - - our department is New Show Studios, which is kind of a branch of the - - an offshoot of the invention company [Davison Design]." Boettcher Depo. at 18:13-22. Valkanas was the president of New Show. Davison was the president of Davison Design and Davison Studios. There appears to be substantial ambiguity regarding on whose behalf Davison was speaking at the February meeting. For instance, Boettcher testified that, during the meeting, "[Davison] went on about *the company* and *his company* and how *his company* and *our company* are closely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

tied." Id. at 25:9-12 (emphasis added). In light of the foregoing, there appears to be a material issue of disputed fact regarding Valkanas's and Davison Design's potential agency liability for Davison's statements.

Having found numerous material issues of disputed fact, the Court concludes that the counter-defendants are not entitled to summary judgment with respect to Needle's claim of slander per se. Valkanas and Davison Design's motion for summary judgment with respect to the slander counterclaim is **DENIED**.

### B.     Intentional Interference with Prospective Economic Advantage

Plaintiffs challenge the sixth counterclaim, that plaintiffs intentionally interfered with Needle's prospective economic advantage ("IIPA"). To make out an IIPA claim, "a plaintiff 'must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.'" Marin Tug & Barge, Inc. v. Westport Petroleum, Inc., 271 F.3d 825, 831 (9th Cir. 2001) (quoting Della Penna v. Toyota Motor Sales, U.S.A, Inc., 902 P.2d 740, 751 (1995)). Needle must present evidence that "[a]n economic relationship existed" between himself and another party, "containing a probable future economic benefit or advantage to plaintiff." California Civil Jury Instructions 7.82 (March 2016); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).

Needle avers two separate factual bases for his IIPA claim based on separate statements by plaintiffs and separate prospective economic advantages. The Court will address each.

### 1.     The Reid Website Contract

First, Needle alleges that Davison's statements during the February meeting, interfered with a freelance, web-development job Needle had been negotiating with the Reid family. Michael Reid, a Davison employee who attended the February meeting, and his wife had been discussing development of a website for "Energy Flow Reiki." The Reids discussed the project with Needle but ultimately decided against the website. Needle alleges that Davison's statements interfered with his prospective income from the Reids' website because Davison defamed Needle and threatened repercussions against

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|--------------------|
| Title    | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

employees who spoke with Needle. Evidence that at least one customer terminated their economic relationship with the claimant after the interference will create a material issue of disputed fact. <u>Monex Deposit Co. v. Gilliam</u>, 680 F. Supp. 2d 1148, 1162 (C.D. Cal. 2010).

Plaintiffs aver that the Reids had already decided against the website *before* the February meeting and therefore Davison's statements could not, as a matter of law, have interfered with their decision.[11] In this regard, the Court finds a material issue of disputed fact.

It is undisputed that, in summer 2013, the Reids and Needle discussed the prospect of Needle developing a website for the Reids' proposed, "Energy Flow Reiki," business. Needle has submitted a declaration that, as of February 10, 2014, he had helped the Reids purchase a domain name for the website, set up a Facebook as well as Gmail account, and built a rudimentary "splash page," which he has offered as an exhibit. Needle Decl. ¶ 20; <u>Id.</u> at Ex. 1.

Plaintiffs have submitted a declaration from Reid, in which he states, "[u]ltimately, we decided not to create the business website. The decision was made *prior to* the February 2014 staff meeting with George Davison." Reid Decl. at 6 (emphasis added). However, the Reid declaration, standing alone, does not entitle plaintiffs to summary judgment. Defendants present circumstantial evidence that the February meeting was the reason his project with the Reids fell through.

Defendants have submitted a declaration from Needle. In it, Needle claims that, by February 2014, Reid had asked Needle "several times" to provide a price for the website project, but that Needle delayed setting a price because of their friendship. <u>Id.</u> at 20. Needle further states that prior to February 10, 2014, Reid had never indicated to him that the Reids might abandon the website project. <u>Id.</u> at 23. Needle avers that after the February meeting and for the first time, "Reid cut all contact with me without explanation, and stopped answering or returning my calls." <u>Id.</u> Furthermore, during

---

[11] Plaintiffs also argue that Davison's statements were true, are inadmissible, and were not made as an agent of any party to this case; however, the Court disagrees, as discussed supra.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

Crompton's deposition, Crompton relayed his own conversation with Reid, noting, "[Reid] felt that it was in his [Reid's] best interest to not have anything to do with the person who was harming his livelihood." Crompton Depo. at 102:9-18. The conflicting declarations of Needle and Reid, as well as Crompton's testimony, create a material issue of disputed fact. Specifically, there is a material issue of disputed fact regarding when and why the Reids chose not to pursue their website project with Needle.

The Court concludes that there is a material issue of disputed fact as to whether at the time of the February meeting, Needle's economic relationship with the Reids was of "probable economic benefit" to him. If it was, then there is a material issue of disputed fact as to whether Davison's statements interfered with that prospective benefit. The Court cannot, however, resolve these questions as a matter of law. Accordingly, with respect to Needle's IIPA claim premised on the Reid website project, counter-defendants' motion for summary judgment is **DENIED**.

## 2.     The Carnegie Mellon University Job

Needle's second factual basis for his IIPA claim is based on alleged interference with Needle's application to work at Carnegie Mellon University ("CMU") in July 2014. The evidentiary support for Needle's CMU-based claim is less well developed. After Needle applied for a job at CMU, he was first given a video interview and was then invited to an in-person interview. Needle Decl. ¶ 28. The in-person interview was conducted by Ms. Habay[12]. Id. ¶ 29. In the process of applying for the position at CMU, Needle also spoke with Adam Nietupski, a CMU employee. Id. Needle alleges that sometime after his video interview, but before his in-person interview, defendants interfered with his application to CMU. Needle alleges that Nathan Field, a Davison Design employee, communicated with CMU and that Field's communications with CMU prevented CMU from hiring Needle.

Plaintiffs claim, "there is no evidence that any action by any Counter-Defendant contributed in any way to CMU's decision not to hire Mr. Needle." Plaintiffs Statement of Uncontroverted Facts at 18. Plaintiffs argue there is no admissible evidence demonstrating that plaintiffs wrongfully communicated with CMU. In response, Needle

---

[12] The parties do not present Habay's full name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

argues that Field told the interviewer at CMU, Habay, that Needle "had stolen trade secrets." Defendants Oppo. at 8. In support of his argument, Needle directs the Court to his own declaration, wherein Needle claims:

> Mr. Nietupski stated that Ms. Habay had spoken to Nathan Fields [Field] . . . . Mr. Fields told Ms. Habay that I had stolen trade secrets, and recommended that CMU and Ms. Habay not associate themselves with me.

Needle Decl. ¶ 29.

However, the statements contained in Needle's self-serving declaration are not admissible. At issue are any of Field's statements to Habay. Needle claims that Habay told Nietupski who told Needle what Field said to CMU. However, Habay's statements to Nietupski and Nietupski's statements to Needle appear to be two layers of inadmissible hearsay. Accordingly, the content of Needle's declaration regarding Field's statements to Habay is not admissible evidence. See Fed. R. Evid. 802.

The only remaining evidence regarding any statements by Field to CMU are from Field's own declaration, filed by plaintiffs. In his declaration, Field describes a "very brief phone call," with Field's brother, Jeremy, "sometime in July 2014." Field Decl. ¶¶ 4-5. Field explains, "my brother called me to ask if I knew James Needle." Id. ¶ 8. During the phone call, Jeremy "mentioned that he was at a party with a friend from Carnegie Mellon University." Id. ¶ 6. Field explains, "I confirmed that I knew James Needle and that he was involved in a lawsuit with [Davison Design]. . . The conversation ended shortly after this exchange." Id. ¶¶ 9-10. Needle does not present admissible evidence disputing Field's declaration. Nor can Needle's IIPA claim based on his job application to CMU survive summary judgment by relying solely on evidence that Field told his brother that Davison Design was involved in a lawsuit against Needle. See Marin Tug & Barge, Inc., 271 F.3d at 831 (must show "conduct that was wrongful by some legal measure other than the fact of interference itself"). Needle presents no admissible evidence that Field's statement was wrongful or was passed on to anyone from CMU.

Therefore, there do not appear to be material issues of disputed fact with regard to plaintiffs' alleged interference with Needle's job-application to CMU. Accordingly, the Court grants summary judgment for plaintiffs / counter-defendants with regard to one of counter-claimants IIPA theories, namely, Needle's CMU application. Counter-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS(MRWx) | Date | September 20, 2016 |
|----------|-------------------------|------|---------------------|
| Title    | NEW SHOW STUDIOS, LLC., ET AL. V. JAMES NEEDLE, ET AL. | | |

defendants' motion for summary judgment with respect to the intentional interference with prospective economic advantage claim is therefore **GRANTED**, **in part** and **DENIED**, **in part**.

## VI.   CONCLUSION

Defendants' motion for partial summary judgment is **GRANTED**, **in part**, and **DENIED**, **in part**.  Defendants' motion for partial summary judgment is **GRANTED** with respect to plaintiffs' false light invasion of privacy claim and copyright claim. Furthermore, defendants' motion for partial summary judgment is **GRANTED** with respect to economic damages arising out of plaintiffs' defamation claim.  Defendants' motion for partial summary judgment is **DENIED** with respect to plaintiffs' trademark claim.

Counter-defendants' motion for summary judgment with respect to the slander per se counterclaim is **DENIED**.  Counter-defendants' motion for summary judgment with respect to the intentional interference with prospective economic advantage is **DENIED**, **in part**, and **GRANTED**, **in part**.  The motion is **DENIED** with respect to alleged intentional interference with Needle's prospective website project for the Reid family. The motion is **GRANTED** with respect to alleged intentional interference with Needle's application to work at Carnegie Mellon University.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |