UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | 'O'   JS-6 |
|---|---|---|
| Case No. | 2:14-cv-01250-CAS (MRWx) | Date   December 1, 2016 |
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   (IN CHAMBERS) - VALKANAS'S MOTION FOR DEFAULT JUDGMENT (Filed October 18, 2016, Dkt. 220)

VALKANAS'S APPLICATION FOR SANCTIONS AND DAMAGES (Filed October 28, 2016, Dkt. 224)

## I.   INTRODUCTION AND BACKGROUND

On February 19, 2014, plaintiffs New Show Studios LLC ("New Show"), Anthony Valkanas, and Davison Design & Development, Inc. ("Davison Design") filed this action against James Needle and Greg Howe. After extensive motions practice, set forth in detail in the Court's summary judgment order, Dkt. 198, and a partial settlement between plaintiffs and Needle, see Dkt. 216, the parties proceeded to trial to resolve one outstanding claim, namely, Valkanas's claim against Howe for defamation.

Valkanas is the president of New Show Studios. Howe, a disgruntled former customer of New Show Studios, sent several emails to another New Show Studios customer, JR White, which were subsequently forwarded to some of Valkanas's employees. In the emails Howe explained that he was at "war" with Valkanas, wanted him "behind bars," and urged White to forward his emails. Dkt. 185-1. Valakans's defamation claim arises out of statements by Howe these early 2014 emails, in which Howe accused Valakanas of being a "murder" suspect or otherwise responsible for a "double homicide." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

      This action was originally scheduled for trial on May 31, 2016. Dkt. 67. On August 25, 2015, in light of the parties' joint stipulation, the Court continued the jury trial from May 31, 2016, to August 30, 2016. Dkt. 92. On June 28, 2016, pursuant to a second joint-stipulation, the jury trial was continued again from August 30, 2016, to October 18, 2016. Dkt. 159. Thereafter, the date of trial in this action remained unchanged.

      On October 11, 2016, Howe, represented by Cyrus Naim, filed an ex parte application to continue the trial for ninety days so that Howe could obtain new counsel. Dkt. 209. In support of his application to continue the trial, Howe offered a declaration from Naim. Dkt. 209-1. In his declaration, Naim explained that his relationship with Howe had "been disrupted" following failed attempts to settle the case and that Howe no longer wished to be represented by Naim. Id. ¶ 2. Naim explained that Howe was no longer accepting his phone calls and that Howe would not "agree to appear for trial." Id. ¶ 3. According to Naim, Howe asked that Naim provide a statement from Howe to the Court and plaintiff's counsel. Id. ¶ 5. In his declaration, Naim then set forth Howe's verbatim statement. Id. In his statement, Howe explained that he was "PRESENTLY WORKING WITH MY GOVERNMENT [Howe resides in Canada] TO GET THE TRIAL SWITCHED TO BUFFALO [New York] IN ORDER THAT I CAN BE PRESENT AND HAVE JR WHITE TESTIFY." Id. Howe continued:

> I DO NOT WANT CYRUS AT THAT CASE BECAUSE WE HAVE A MUTUAL RELEASE NOW, AND ANY FURTHER DOCUMENTATION WILL BE SENT TO ME AT THE COURTS COSTS [sic]. . . I WILL OF COURSE APPEAL MANY DECISION [sic] OTHER THAN HAVING THE ENTIRE CASE DISMISSED AND 100% OF THE LAWYER FEES PAID . . . AS WELL I DEMAND MY SHOW "CHARITY CHALLENGE" RETURNED TO ME IN FULL, AND THE NAME OF THE COMPANY IT WAS ILLEGALLY SOLD TO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

Id.[1]  Also on October 11, 2016, Howe filed an application to proceed pro se rather than be represented by Naim.  Dkt. 210.  On October 13, 2016, Naim filed a request to withdraw as Howe's counsel.  Dkt. 213.

On October 13, 2016, the Court denied Howe's request for a continuance, Dkt. 214, Howe's application to substitute himself in place of Naim, Dkt. 215, and Naim's request to withdraw, Dkt. 217.

On October 18, 2016, jury trial was set to commence and hearing was held.  Dkt. 221.  Plaintiff's counsel was present.  Naim was present.  However, Howe was not present.  Naim represented to the Court that he did not expect Howe to attend, but did not believe he could proceed with trial on Howe's behalf in light of Howe's demand that he no longer be represented by Naim and the breakdown of communication between them.  Plaintiff's counsel indicated that it would seek a default judgment based upon Howe's failure to appear for trial or otherwise defend against Valkanas's defamation claim.  The Court continued the Jury Trial to October 19, 2016, and ordered Naim to inform Howe of the October 18, 2016, proceedings and continuance.  The Court instructed Naim that Howe would be permitted to appear by telephone on October 19, 2016, if he chose.  Id.

The evening of October 18, 2016, Valkanas filed a motion for default judgment.  Dkt. 220.

---

[1] New Show Studios was a company that sold services relating to the development of television show ideas.  According to Valakanas's declaration, Howe purchased certain services from New Show in relation to a show concept called "Charity Challenge."  Valkanas Decl. ¶ 3.  Howe was dissatisfied with New Show's services and demanded a refund, which the company provided.  Id.  Thereafter, it is uncontested that Howe began posting about New Show and Valkanas on the internet and communicating with other New Show customers about his dissatisfaction.  Those subsequent statements by Howe are what eventually gave rise to Valkanas's defamation claim against Howe.  There is no claim or counterclaim in this action relating to the parties' rights in the show "Charity Challenge" nor has either party ever alleged a claim arising out of ownership of the show concept.  The only allegations in this case relating to the show concept are plaintiffs' background allegations in the Fourth Amended Complaint, in which they allege that Howe is a dissatisfied New Show customer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

On October 19, 2016, jury trial was again set to commence. Plaintiff's counsel and Naim were present. Howe appeared telephonically. Naim, at Howe's instruction, provided the Court with a copy of correspondence between Howe and Naim dated between October 18, 2016, and October 19, 2016. Howe asked the Court to read the email correspondence before proceeding with the hearing, which the Court did. Thereafter the Court ordered that the email correspondence be made part of the record. Dkt. 222. The email correspondence is outlined below.

The initial email in the correspondence between Howe and Naim is an email from Naim to Howe informing Howe that plaintiff's counsel was filing a motion for default judgment based upon Howe's failure to appear for trial. Dkt. 222 at 6.

In response, Howe sent a reply email to Naim stating, "Can you give this note to the judge," followed by Howe's apparent message to the Court. Id. at 5. In his written statement to the Court, Howe stated:

> Do to the fact I was told by the judge when I was in Los Angeles the first time "I would never have to come back to Los Angeles again" ,,, not as Cyrus thinks he said, "I would never have to come back to Los Angeles for a second settlement hearing" ….. Do to the fact that I told Cyrus I would only be able to go out there to Los Angeles once, and he told me the settlement one was the one I had to go to, so I did…. Do to the fact Cyrus told me this trial would go into the middle of next week, and the fact of my work load, my wife and I carrying for both parents who are in there late 80's and early 90's and my 25 animal rescue cats and to make things worst losing my passport some time coming home from Los Angeles when t going to Buffalo to meet with our new legal team on Thursday ( where I was refused entry into the United States)… I have already been turned down by the judge to have me report by video and have my friend (Jr White) give testimony the same way (Jr is the one who knows I never accused anyone of murder . . . . For these reasons I can not attend the trial…….. I prefer to let the judge make her ruling so we can appeal it on the East coast and get the case reopened as I have new evidence . . . There is no deal coming from me and I expect if the judge dismissed the case that all legal fees and my $ 40,000 out of pocket fees get paid back and my show " CHARITY CHALLENGE ", returned to me and I want the name of the company it was sold too. . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

> Cyrus it is very important you give this to [the judge] as I doubt you gave her my other messages . . . I dont want to talk to you on the phone because you make me mad, it seems the judge refused to have you off the case. So as far as I am concerned you are working for the courts. . .

Id. (sic). Thereafter, it appears that at 9:46pm on October 18, 2016, Naim sent Howe plaintiff's motion for default judgment. Id. On the morning of October 19, 2016, Howe responded with another email to Naim in which he appears to explain that the basis for his seeking to represent himself was an alleged email from plaintiff's counsel to Naim following up on their settlement negotiations in which plaintiff's counsel allegedly stated, "THE PURPOSE OF THIS E-MAIL IS TO FOLLOW UP ON OUR FRIDAY CONVERSATION, YOU STATED YOU WOULD ATTEMPT TO PERSUADE GREG HOWE TO A MUTUAL." Id. at 4. Howe then explained that he expected the Court to "let me start filing on the east coast. . . Please also ask the judge to talk to the other judge about his comments about telling me I would not have to go back to Los Angels." Id. (sic).

After reviewing the email correspondence, the Court questioned Howe telephonically regarding his failure to appear for trial. Howe stated that another judge[2] told him he would not have to come to Los Angeles. This does not appear to have been true. The Court was informed by plaintiff's counsel that Magistrate Judge Wilner had indicated to Howe that Howe would not be required to travel to Los Angeles for further *settlement* conferences. However, the magistrate judge did not tell Howe he would not be required to come to Los Angeles for trial. Furthermore, it appears from Howe's email correspondence that Naim had, prior to October 18, 2016, similarly advised Howe that Howe would nonetheless be required to attend trial. See Dkt. 222 at 6 ("[Naim] thinks [Wilner] said, 'I would never have to come back to Los Angeles for a second settlement hearing'"). Howe also stated that he had lost his passport.[3]

---

[2] Based on the timing of Howe's claim it appears that Howe was referring to Magistrate Judge Wilner, who served as a settlement officer.

[3] The Court doubts the veracity of Howe's purported lack of passport. Howe traveled to the United States for a settlement conference in this matter. Furthermore,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

    During the telephonic hearing on October 19, 2016, the Court informed Howe that he had adequate notice of the scheduled jury trial and that the Court intended to enter a default judgment against him for failure to appear. Howe reiterated his opposition to being represented by Naim. Howe further indicated that he would not travel to Los Angeles to defend the action and that the Court should rule so that he may file an appeal of the Court's orders elsewhere. Soon thereafter and before the conclusion of the hearing, Howe elected to end the phone call. The Court ordered that Naim be relieved as counsel of record for Howe and ordered the clerk to enter a default against Howe as a consequence of his failure to appear for trial. Dkt. 222 at 2. The clerk has entered a default against Howe.

Howe did not notify the Court of any purported issues with his passport until October 19, 2016, the day after the scheduled commencement date for the trial, October 18, 2016.

    Howe appears to claim that he first realized he had lost his passport on a "Thursday" when he attempted to visit Buffalo, New York. See Dkt. 222 at 6 ("to make things worst [sic] losing my passport some time coming home from Los Angeles when t [sic] going to Buffalo to meet with our new legal team on Thursday"). Viewing this excuse in the light most favorable to Howe, Howe acknowledges knowing that he had misplaced his passport at least five days before trial was set to commence (October 13, 2016) and failed to notify the Court or plaintiff. However, Howe filed a motion for a continuance on the same day, October 13, 2016, in which Howe made no mention of his allegedly missing passport despite asking Naim to file a verbatim statement on his behalf. See Dkt. 209. At that time, the *only* basis on which Howe sought a continuance of trial was so that he could seek new counsel. Id.

    Additionally, if, as Howe claims, Howe believed that Judge Wilner promised him he would not have to travel to Los Angeles for trial, Howe would have had no reason to have been looking for his passport or provide other reasons for his absence. "The district court need not swallow a party's self-exculpatory affidavit hook, line and sinker. Rather, the court is entitled to be skeptical of self-serving allegations, especially when they are wholly insubstantial and contradicted by the record." Laurino v. Syringa Gen. Hosp., 279 F.3d 750, 755 (9th Cir. 2002) (Kozinski, J. dissenting). Plaintiff's bald assertions are "what's known as 'the dog ate my homework' excuse," and are entitled to little weight given the circumstances of this case and in which they were made. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

The Court scheduled a hearing on plaintiff's motion for default judgment for November 21, 2016 at 12:00pm. The Court ordered plaintiff to file and serve evidence regarding attorneys' fees and any damages sought pursuant to its motion for default judgment no later than October 28, 2016. The Court ordered Howe to file and serve any opposition no later than November 14, 2016, and to submit a mandatory chambers copy via facsimile. The Court further ordered that Howe state in any opposition whether or not he intended to cross examine any live testimony regarding damages or to otherwise appear at the November 21, 2016, hearing. Id.

On October 28, 2016, plaintiff filed an application for sanctions and damages following default judgment. Dkt. 224. On November 2, 2016, the Court received and placed in the record a handwritten letter addressed "To: Appeals Clerk" from Howe. Dkt. 226. On November 4, 2016, the courts received a second handwritten letter addressed "To: Appeals Clerk" from Howe with a number of documents attached. The Court placed those documents and the letter into the record. Dkt. 227 ("Howe's Second Letter").[4]

---

[4] Howe's uncaptioned and handwritten filings are in the nature of either an untimely motion to transfer this action to Buffalo, New York, or to appeal the Court's rulings in this matter. Their contents, as described herein, are not always clear, nor does Howe offer a valid basis for opposing either of plaintiff's motions. Many of the claims in Howe's letters appear to be only indirectly related to this action. For instance, Howe avers that "MY SHOW 'CHARITY CHALLENGE'" must be "RELEASED BACK TO ME" and that ownership of his show "IS THE MAIN REASON WE ARE IN COURT." Dkt. 227, "Schedule 'B'" at (1). Howe also states in a conclusory and confusing fashion that Davison Design has "OVER 55,000 VICTIMS AND HUNDREDS OF THOUSANS COUNTS OF FRAUD (MOSTLY MAIL FRAUD). JR [evidently a friend of Howe's] HAS RECORDED EVER CONVERSATION HE HAD WITH VALKANAS AND DOCUMENTS TO PROVE HE WAS ALSO A VICTIM OF FRAUD. (JR WOULD BE HAPPY TO TALK TO YOU)." Dkt. 227 at 2 (sic).

Additionally, Howe appears to contend that he is not a party to this case at all. This may be based upon a misunderstanding of the case title, which lists Needle first and then "et al." Howe attached to his Second Letter a number of documents from the record

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

Having carefully considered the parties' submissions, the Court finds and concludes as follows.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Granting or denying a motion for default judgment is a matter within the court's discretion. Elektra Entertainment Group, Inc. v. Bryant, 2004 WL 783123, *1 (C.D. Cal. Feb. 13, 2004); see also Sony Music Entertainment, Inc. v. Elias, 2004 WL 141959, *3 (C.D. Cal. Jan. 20, 2004). The Court concludes that plaintiff is entitled to default judgment against Howe pursuant to both Rule 55(b) and also as a sanction pursuant to the Court's inherent powers. As explained below, the relevant considerations under both standards favor entering a default judgment.

### A. Default Pursuant to Rule 55(b)

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment pursuant to Rule 55(b): (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); see also Bryant, 2004 WL 783123 at *1-2.

The Court begins by evaluating the seven Eitel factors. The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (Manella, J.). Given Howe's failure to appear for trial, failure to obtain adequate representation to appear on his behalf at trial, and insistence that he not be required appear and defend against Valkanas's claim, plaintiff would be prejudiced if denied a remedy against defendant. See PepsiCo, Inc., 238 F. Supp. 2d at 1177 (stating that

---

in this case, about which he argues "ALL OF THESE APPEALS ARE FOR JIMM NEEDLE (CHECK THE NAME) I AM GREG HOWE." Id. at 3.

Case 2:14-cv-01250-CAS-MRW   Document 234   Filed 12/01/16   Page 9 of 18   Page ID #:5036

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

plaintiffs would have no other recourse if a default judgment were not entered). Plaintiff has actively litigated this case for over two and a half years. The parties and Court have expended countless hours in an attempt to resolve the factual and legal issues presented herein. In the final weeks preceding trial, plaintiff's reasonably expended many hours preparing for a jury trial on a single issue, Howe's defamation of Valkanas in 2014, only to be unexpectedly denied their right to a trial on the matter as a result of Howe's decision not to appear. Accordingly, the first Eitel factor favors entering a default judgment.

     The second and third Eitel factors assess the substantive merit of the plaintiff's claims and the sufficiency of plaintiff's pleadings, which "require that a [movant] 'state a claim on which [it] may recover.' " Id. (internal citation omitted). Howe has conceded that Valkanas has stated a claim for defamation and is entitled to resolution of that claim at trial. See Defendants' Motion for Summary Judgment at 19 ("Defendants do not dispute that there are issues of fact that entitle Mr. Valkanas to a trial on his claim for defamation against Mr. Howe"). Accordingly, in light of Howe's failure to appear for trial, the second and third Eitel factors also weigh in favor of default judgment.

     Regarding the amount of money is dispute, plaintiff seeks only nominal damages from defamation. Accordingly, this factor weighs in favor of entering default judgment.

     The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Because neither Valkanas nor Howe sought summary judgment with respect to Valkanas's defamation claim, the Court has not had occasion to evaluate whether or not there are material factual disputes. It is clear from Howe's Second Letter that he disputes whether or not he has actually defamed Valkanas. See e.g. Dkt. 227 at 1 ("I AM ALSO APPEALING THE 'MURDER ACCUSATION' THAT I AM ACCUSSED [sic] OF. . . THIS WHOLE CASE IS JUST A COMPLETE FABRICATION OF LIES"). The preferred process for resolving the parties' material factual disputes would be a jury trial on the merits. However, after ample notice of the commencement of the trial, Howe declined to appear so that factual disputes could be resolved. Accordingly, although this factor weighs against entering default judgment, it is outweighed by consideration of the other Eitel factors.

     The sixth Eitel factor considers whether defendants' default may have been the product of excusable neglect. See PepsiCo, 238 F. Supp. 2d at 1177. Howe's failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

appear for trial in this case is not the product of excusable neglect, but was the product of Howe's choice to fire his attorney and decline to appear himself. In Howe's Second Letter, Howe avers that:

> [Naim] TRIED TO CONVINCE ME [a mutual release with plaintiffs] WAS MY BEST OPTION AND I WILL LOSE AT TRIAL. AT THAT TIME I TOLD HIM I WAS NOT ABLE TO ATTEND A ONE AND A HALF WEEK TRIAL BECAUSE OF WORK, FAMILY COMMITMENTS, AND MY 25 FERAL CAT RESCUE THAT I OPERATE (AND NOBODY BUT ME CAN LOOK AFTER THESE CATS). AND I INSISTED I TESTIFY FROM THE ST. CATHARINES Court HouSE (WHERE I LIVE) VIA SATELLITE. AND JR WHITE TESTIFY FROM BUFFALO (WHERE HE LIVES). AND TO MAKE THINGS WORST ON OCTOBER 13/16 ON MY WAY TO BUFFALO TO MEET NEW LAWYERS, I REALIZED MY PASSPORT WAS LOST AND WAS REJECTED ENTRY TO THE UNITED STATES. NEEDLESS TO SAY [Naim] TOLD ME THE JUDGE WOULD NOT GRANT THIS, AND I HAD TO BE IN LOS ANGLES. THAT WAS 2 WEEKS PRIOR TO TRIAL AND PLENTY OF TIME TO GRANT MY REQUEST.
>
> THE NEXT DAY [Naim] TOLD ME IF I DID NOT COME TO LOS ANGELES I WOULD BE FOUND GUILTY AND HAVE TO PAY ALL EXPENSES, COURT COSTS AND WOULD BE SUED AGAIN. THAT IS WHEN I TOLD HIM I WANTED HIM OFF THIS CASE AND TO LET THE JUDGE KNOW. . . .

Dkt. 227, "Schedule 'B'" at (3)-(4) (sic). Howe's Second Letter is not a sworn statement, however, even assuming that Howe's arguments are based in fact, Howe's Second Letter illustrates that he had ample notice of the impending jury trial, that it was intended to finally resolve factual disputes, and that his failure to attend could result in the entry of a default judgment against him, Id. ("IF I DID NOT COME TO LOS ANGELES I WOULD BE FOUND GUILTY"). Furthermore, well in advance of trial, Howe was aware that he would need replacement counsel or that he would need to appear on his own behalf. Howe was also aware that, in the week preceding trial, the Court denied his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

application for a continuance.[5] Finally, on October 19, 2016, Howe persisted in his assertion that he simply not be required to appear for trial and told the Court that it should proceed so that he may attempt to appeal this action elsewhere. Accordingly, Howe's default was not the product of excusable neglect.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Of course, however, pursuant to Federal Rule of Civil Procedure 55(b), "this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (internal citation omitted). Plaintiff, witnesses on his behalf, and plaintiff's counsel all traveled and appeared for trial so that this case might be decided by a jury. Defendant prevented a jury trial from proceeding by failing to appear. Accordingly, the Eitel factors weigh in favor of entering a default judgment.

Rule 55(b)(2) requires that "if the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application [for default judgment] at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2). It is unclear whether this requirement applies in this context. See Rana Research, 8 F.3d 29 (9th Cir. 1993) ("The notice provisions of Rule 55(b)(2) of the Federal Rules of Civil Procedure do not apply when the trial court grants default as a sanction for failure to appear at trial rather than for failure to defend the action"). However, whether or not default here is best construed as a sanction or as a result of Howe's failure to defend the action under Rule 55, the Court concludes that Howe has had adequate notice of plaintiff's motion for default judgment. It appears that Naim sent Howe a copy of the instant motion on October 18, 2016. Furthermore, the Court informed Howe of its intent to enter a default on October 19, 2016, over the telephone. The Court then set the matter for hearing on November 21, 2016, and ordered Howe to file any opposition no later than November 14, 2016. Finally, Howe attached the Court's October 19, 2016, order to his Second Letter. In light of the foregoing, Howe has had ample notice of the risk that the Court will issue the instant order and enter a default judgment against him.

---

[5] Howe's October 11, 2016, request for a continuance of the October 18, 2016 trial date made no mention of family obligations, work obligations, his allegedly lost passport, or his role in the care of 25 feral cats. Instead, it relied narrowly on his desire not to be represented by Naim. The Court first learned of these other obligations during its October 19, 2016, wherein Howe appeared by telephone.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

Howe contends in his Second Letter that the Court must either dismiss this action in its entirety or, in the alternative, that he intends his letter to serve as an appeal of the Court's orders. Nothing in Howe's Second Letter indicates an intention on Howe's part to appear in this matter any further before this Court. Accordingly, a default judgment shall be entered against Howe pursuant to rule 55(b)(2).

### B.   Default Judgment as a Sanction

As is clear from the foregoing, this case does not involve a typical default pursuant to Rule 55, wherein one party shows no interest in defending a claim. Instead, Howe has impeded and delayed resolution of this action by declining to appear for trial. Accordingly, as discussed below, there is some ambiguity regarding whether default judgment is appropriately granted pursuant to Rule 55 or in the exercise of the Court's inherent powers to sanction a party for failing to appear or both. The Ninth Circuit has set forth a different standard for default judgment where it is entered as a sanction as opposed to pursuant to Rule 55. However, plaintiff is entitled to default judgment under either standard.

In Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141 (9th Cir. 1989), the Ninth Circuit examined the application of Rule 55 where a defendant was aware of an impending trial, its counsel withdrew in advance of trial, and the party failed to retain new counsel or otherwise appear on the trial date. The Ringgold court affirmed the entry of default judgment against the non-appearing defendant. The court based its reasoning on that of Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61 (2d Cir. 1986), wherein the Second Circuit similarly affirmed the entry of default judgment where a party's counsel failed to appear for trial. The Ringgold court, quoting Brock, observed that " '[i]n this context, a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun.'" Ringgold, 880 F.2d at 1141 (quoting Brock, 786 F.2d at 64). The Ringgold court observed that the situation where a party fails to appear for trial is "no different" from that in Brock and that Rule 55(b)(2)'s notice requirements did not apply. Id. The Ringold court did not clarify whether default judgment was appropriately entered as a sanction or pursuant to Rule 55 or both, however, in Rana, the Ninth Circuit implied that default judgment is more appropriate as a sanction under circumstances like those presented here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

In Rana the Ninth Circuit, held that, where the lower court entered a default judgment against a non-appearing party, the trial court had "intended the default as a sanction [but] erroneously credited the default to a failure to defend under Rule 55." Rana, 8 F.3d 29 (relying on Ringgold and Brock). The court went on to explain that "[w]hen determining whether to enter default as a sanction, the trial court should balance (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. (citing Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir.1990), cert. denied, 498 U.S. 1109 (1991)). The foregoing Rana factors appear to derive from cases wherein a court dismisses a case as a sanction for failure to comply with a court order rather than pursuant to Rule 55. See e.g. Thompson v. Hous. Auth. of City of Los Angeles, 782 F.2d 829, 831 (9th Cir. 1986) (examining the foregoing factors in light of a district court's "inherent power" to control its docket).

In this case, the Court concludes that default judgment is appropriate both as a sanction and pursuant to Rule 55. Balancing the Rana factors, the Court concludes that factors one, two, and five weigh heavily in favor of entering a default judgment against Howe. Howe had ample notice of the trial date, which remained unchanged from June 28, 2016. Furthermore, in light of Howe's decision not to appear before the Court for trial, there does not appear to be a less drastic remedy. There is some risk of prejudice to Howe from the entry of default judgment because Howe continues to dispute the merits of Valkanas's claim. However, any prejudice to Howe has been self-imposed as a result of his decision not to appear for trial so that his factual disputes could be resolved. In light of the foregoing, the Court concludes that the relevant factors weigh in favor of entering default judgment as a sanction for Howe's failure to appear for trial.

Consequently, Valkanas's motion for default judgment is **GRANTED**.

### C. Damages and Injunctive Relief.

Plaintiff requests nominal damages of at least one dollar as a result of Howe's defamation. Dkt. 224 at 1. Valkanas has offered a declaration explaining the injury he has suffered as a result of Howe' defamatory statements. See Valkanas Decl. ¶¶ 4-15. Accordingly, Valkanas is awarded one dollar in damages and the Court concludes that no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

further presentation of evidence regarding unliquidated damages is necessary. See Schwarzer, Tashima, & Wagstaffe, Federal Civil Practice Before Trial, 6:95 (2015).

Plaintiff also requests injunctive relief against Howe. Specifically, Valkanas seeks a permanent injunction "prohibiting Howe from making any statement related to Mr. Valkanas' involvement in an alleged 'murder' or 'homicide' or 'double homicide.'" Dkt. 224.

"[F]ollowing a trial at which it is determined that the defendant defamed the plaintiff," the California Supreme Court has concluded that "the court may issue an injunction prohibiting the defendant from repeating the statements determined to be defamatory." Balboa Island Vill. Inn, Inc. v. Lemen, 40 Cal. 4th 1141, 1156 (2007). However, "in the infrequent instances where other courts have upheld injunctions of defamatory speech, there have usually been unique and extenuating circumstances, and vigorous dissents." Oakley, Inc. v. McWilliams, 879 F. Supp. 2d 1087, 1090 (C.D. Cal. 2012) (citing e.g. San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters, 125 F.3d 1230, 1238–39 (9th Cir.1997) (emphasizing the narrowness of its decision) and id. at 1240 (Kozinski, J., dissenting) ("From bad to worse: Not only is this the first case to affirm a labor injunction, it is the first ever (so far as I am aware) to uphold a preliminary injunction against speech covered by" New York Times v. Sullivan, 376 U.S. 254 (1964)). Ordinarily, injunctions against speech are a presumptively unconstitutional prior restraint. See Balboa, 57 Cal.Rptr.3d 320 (Kennard, J., concurring and dissenting).

The Court finds the court's reasoning in Oakley persuasive. Id. In Oakley, the court evaluated whether or not to issue an injunction against defamatory statements, including defendant's statements that plaintiffs were "war profiteers" and that they cheated on their spouses. Id. at 1088. The court acknowledged that "vile, hurtful speech, such as that published by [defendant there], has the capacity to cause real and significant injury," id. at 1089, but nonetheless observed that "never in the [then] 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case or any other," id. at 1092. Ultimately, the court denied plaintiff's motion for a permanent injunction based on the "longstanding rule that injunctions of speech in defamation cases are impermissible under the First Amendment." Id. at 1093.

Plaintiff's motion here fares no better and does not present the type of exceptional circumstances requiring a permanent injunction against certain speech. The risk of injury

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

to Valakanas, should Howe choose to repeat his accusations in the future, is insufficient to warrant an injunction. Should Howe decide to make defamatory statements about Valkanas in the future, Valkanas may bring a new claim against Howe and seek recovery for his injuries.

### III. PLAINTIFF'S APPLICATION FOR SANCTIONS

Plaintiff next brings an application for sanctions against Howe for failure to appear at trial. In its October 19, 2016, order the Court instructed plaintiff to limit its sanctions application to the period between September 26, 2016,[6] and October 19, 2016.

Rule 11(b) provides that an attorney or unrepresented party certifies that their pleadings and advocacy are not presented for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 imposes on attorneys an "objective standard of reasonableness under the circumstances." Golden Eagle Dist. Corp. v. Burroughs Corp., 801 F.2d 1531, 1537 (9th Cir. 1986) (internal quotation marks omitted). The imposition of sanctions is a matter within the discretion of the court. Fed. R. Civ. P. 11(c). "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation." Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 587 (1993). The court may order a party in violation of Rule 11 to pay "reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

In this action, the Court concludes that Howe's decision not to attend trial on either October 18, 2016, or October 19, 2016, was unreasonable and for an improper purpose. Howe's decision was intended to cause delay. Based upon Howe's representations to the Court on October 19, 2016, and Howe's subsequent letters it is clear that he was aware of the trial date and chose not to attend. Despite Howe's statements to the contrary and his representations to the Court, the Court further concludes that neither this Court nor the magistrate judge with whom the parties held a settlement conference ever relieved Howe

---

[6] The date of the pre-trial conference order in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

of his obligation to travel to Los Angeles or ensure counsel would appear on his behalf at trial.

    Not only did Howe decide not to attend trial, but Howe failed to inform the Court and plaintiff of his apparent position that he would, under no circumstances, appear for trial on October 18, 2016.  Howe avers that he had reasons not to appear, including the alleged loss of his passport on or around October 13, 2016, and "mostly," according to Howe, the necessity that he stay in Canada in order to care for a group of feral cats.  Dkt. 226.  However, "[o]ur law must not become so caught up in procedural niceties that it fails to sort out simple instances of right from wrong and give some redress for the latter."  ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 325 (1994) (Kennedy, J. concurring).  Even if Howe's purported reasons for not appearing are real, they did not relieve Howe of his obligation to have someone appear on his behalf or notify the parties that he would not attend.  It appears to the Court that Howe chose not to appear so as to avoid a jury trial on the merits of Valkanas's claim and instead seek an untimely transfer to a more convenient venue for himself.  Howe's last minute decision not to be represented by Naim, upon which Howe's sole request for a continuance was based, is no more availing.  Howe is entitled to hire counsel of his choice, but he cannot be permitted to relieve his counsel on the eve of trial without arranging to appear on his own behalf or through new counsel.  Furthermore, anticipating Howe's attempt to delay trial, the Court denied Howe's requests for a continuance and to replace Naim.  Howe chose to ignore the Court's decisions and act as though both motions had been granted.

    By choosing not to appear, Howe needlessly and unreasonably increased the costs of this litigation.  Plaintiff prepared for trial.  Plaintiff, plaintiff's counsel, and plaintiff's witnesses traveled to Los Angeles for trial as scheduled.  However, it appears that Howe never intended to be present for trial as scheduled.  Accordingly, sanctions are appropriate and the Court orders Howe to pay plaintiff's reasonable attorneys' fees and other expenses resulting from his failure to appear for trial.

    Plaintiff has offered a declaration by John Du Wors, plaintiff's counsel of record, in support of its request for attorney's fees in the amount of $115,175.50 accrued between the Court's pretrial conference order and October 19, 2016.  Dkt. 224-3.  Plaintiff also requests costs amounting to $11,326.87.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

    The Court notes that during much of the period leading up to trial Needle remained a defendant in this action and there were additional claims to be tried between Needle and Davison Design. In addition to the defamation claim against Howe, upon which the Court has entered a default judgment here, the parties were preparing for trial regarding a trademark infringement claim by Davison Design against Needle and two counterclaims by Needle against Davison Design. See Pretrial Conference Order, Dkt. 202. The factual and legal basis for Valkanas's defamation claim against Howe is distinct from the factual and legal questions arising under Davison Design's and Needle's respective claims. Although plaintiff's counsel represented both Valkanas and Davison Design in this matter, Davison Design was able to reach a settlement with Needle and resolve all of the claims except Valkanas's claim against Howe. Howe should not be required to pay attorney's fees accrued as a result of claims between Davison Design and Needle.

    Plaintiff's exhibit regarding fees and costs does not, in most instances, distinguish between work on Valkanas's claim against Howe and the other claims that were previously pending trial in this action. It appears from plaintiff's exhibit that Davison Design and Needle reached a settlement agreement on or around October 3, 2016. Excluding the costs and fees associated to the settlement agreement with Needle, the Court calculates plaintiff's attorneys' fees between October 4, 2016, and October 19, 2016, to be $76,284. Between those dates, plaintiff also had $7,557.32 in costs, principally as a result of traveling for trial. These costs and fees appear to have accrued in anticipation of and preparation for trial regarding matters unrelated to the settlement with Needle or the claims between Needle and Davison Design. Having reviewed the Du Wors declaration, including the fees of the various attorneys involved, their relative experience, and the number of hours they worked, the Court concludes that $83,841.32 in total costs and fees is reasonable. Because of uncertainty regarding the allocation of time to Valkanas's claim against Howe and the other claims in this action prior to the settlement agreement between Davison Design and Needle, the Court has no principled basis upon which to divide attorneys' fees prior to October 4, 2016. Accordingly, Howe is ordered to pay $7,557.32 in costs and $76,284 in attorneys' fees, for a total of $83,841.32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:14-cv-01250-CAS (MRWx) | Date | December 1, 2016 |
|---|---|---|---|
| Title | NEW SHOW STUDIOS LLC. ET AL. V. JAMES NEEDLE ET AL. | | |

## IV. CONCLUSION

Valkanas's motion for default judgment is **GRANTED**. The Court enters default judgment with respect to Valkanas's defamation claim against Howe. The Court orders Howe to pay $1 in damages resulting from defamation.

Valkanas's motion for sanctions is **GRANTED**. Howe is ordered to pay $7,557.32 in costs and $76,284 in attorneys' fees.[7]

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[7] During oral argument on this matter, plaintiff's counsel inquired as to whether and how this award might be offset by the Court's, March 20, 2015, order awarding defendants $49,696.00 in fees and costs as the prevailing party regarding defendants' Anti-SLAPP motion to strike. Dkt. 63. The Court's previous award was granted to Howe and Needle jointly. If plaintiffs have settled that prior award with one of the defendants, plaintiffs are not required to pay any additional amount to the other defendant. Accordingly, the Court's March 20, 2015, award should not be used to offset any amount owed by Howe to Valkanas pursuant to this order.